10 N.Y.3d 523 (2008)
890 N.E.2d 201
860 N.Y.S.2d 439
In the Matter of SANTOS SUAREZ, Appellant,
v.
JOHN BYRNE, as Acting Justice of the Supreme Court, Bronx County, et al., Respondents.
Court of Appeals of the State of New York.
Argued April 17, 2008.
Decided June 3, 2008.
*524 Center for Appellate Litigation, New York City (Mark W. Zeno and Robert S. Dean of counsel), for appellant.
Robert T. Johnson, District Attorney, Bronx (Peter D. Coddington *525 of counsel), for respondent.
Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

OPINION OF THE COURT
READ, J.
At issue in this appeal is whether Santos Suarez may be retried for first-degree manslaughtera count submitted to but not considered by the jury in his first trialafter his acquittal of intentional murder and our reversal of his conviction for depraved indifference murder on the ground of legal insufficiency. For the reasons that follow, we conclude that Suarez may be reprosecuted for intentional manslaughter; therefore, we affirm.

I.
On February 22, 2000, Suarez stabbed Jovanna Gonzalez in the throat, chest, and abdomen. He fled without summoning help, and Gonzalez, his live-in girlfriend and the mother of his infant daughter, bled to death. For this killing, Suarez was arrested and charged in a four-count indictment with second-degree murder (both intentional and depraved indifference murder) (Penal Law § 125.25 [1], [2]); first-degree manslaughter (intentional manslaughter) (Penal Law § 125.20 [1]); and fourth-degree criminal possession of a weapon (possession of a dangerous knife with intent to use the same unlawfully against another) (Penal Law § 265.01 [2]).
At trial, Suarez raised justification and extreme emotional disturbance (EED) as defenses, and contested his intent to cause Gonzalez's death, testifying that the stabbing was an "accident" and not intentional. The trial judge submitted four crimes to the jury: intentional murder, first-degree manslaughter (intentional murder reduced by virtue of an EED), depraved indifference *526 murder, and first-degree manslaughter (intentional manslaughter).[1]
After defining intent as a general matter and explaining justification, the trial judge read and explained the first count of the indictment, intentional murder in the second degree. He then turned to EED, telling the jurors that if they decided that Suarez intentionally murdered Gonzalez while under the influence of an EED (which the judge subsequently defined), they were required to "return a verdict of Manslaughter in the First Degree, instead of guilty of Murder in the Second Degree" (see Penal Law § 125.20 [2]). He "refer[red] to [this] crime as reduced manslaughter because we have another count of Manslaughter in the First Degree, that is, [that Suarez] with the intent to cause serious physical injury, caused the death of . . . Gonzalez" (see Penal Law § 125.20 [1]). He instructed the jurors that "[t]he affirmative defense of [EED] requires you first . . . to find the fact that the two elements of [second-degree intentional murder have] been proven. If you find [that] they have been proven, you consider this defense. If they're not proven, mark this verdict sheet not guilty, don't consider [EED]."
Next, the trial judge read and explained the second count of the indictment, depraved indifference murder. He then read and explained first-degree manslaughter, the crime that the indictment's third count accused Suarez of committing. The judge summed up as follows:
"As I said, if you find [Suarez] not guilty of murder in the second degree, intentional murder[,] now consider the crime of murder in the second degree, depraved indifference murder.
"If you find all three elements [of depraved indifference murder] have been proven beyond a reasonable doubt[,] mark your verdict sheet guilty. Stop and go no further.

"On the other hand, [if] after considering that crime [of depraved indifference murder] you find the People have failed to prove one or more of those three elements beyond a reasonable doubt[,] mark *527 your verdict sheet not guilty [and] then consider the crime of manslaughter in the first degree. That's the crime intended to cause serious physical injury that caused the death of the deceased" (emphasis added).
During the first morning of deliberations, the jury sent the trial judge a note, asking him to explain both intentional homicide, "just a brief breakdown," and depraved indifference murder again. In response, he repeated the definitions of intentional murder and depraved indifference murder. Shortly after lunch, the jury sent him another note, which read "We have reached a verdict. We are having a problem with counts two [reduced manslaughter] and three [depraved indifference murder]. Do we need to pick one or the other or both?"[2]
After informing counsel that he would not "mention justification as a defense because [the jurors have] already gone beyond that stage," the trial judge read the jury's note aloud and reiterated his instructions, concluding as follows:
"So if you find him guilty of that [intentional murder], you have to consider the defense [EED] . . . You only consider depraved indifference murder if you find him not guilty of intentional murder. Then you have to mark that not guilty. You don't consider Man One [reduced manslaughter]. You go right to depraved indifference murder. You mark him either guilty or not guilty. If you find him not guilty of that count [of depraved indifference murder,] you consider the last count Man One. And you make the determination of whether those elements have been proven or not proven" (emphasis added).
In short, the judge submitted the intentional and depraved indifference murder counts to the jury in the alternative. He told the jurors not to consider intentional manslaughter (intent to cause serious physical injury) unless they first acquitted Suarez of depraved indifference murder.
*528 After the jury announced its verdict acquitting defendant of intentional murder, the trial judge stated, "Now, they don't consider manslaughter in the first degree. It says not guilty on the verdict sheet anyway."[3] Similarly, after the jury announced the guilty verdict for the depraved indifference murder count, the judge said, "Don't consider the fourth count [intentional manslaughter (intent to cause serious physical injury)] because I instructed the jury not to consider any" (emphasis added). At that point, the court clerk interrupted the judge, stating "Members of the jury, listen to your verdict as it stands recorded. You and everyone [sic] of you says you find Santos Suarez guilty of depraved indifference homicide, and so say you all." A poll confirmed the verdict's unanimity, and the judge dismissed the jurors. He subsequently sentenced Suarez to a term of 20 years to life in prison.
Suarez appealed his conviction to the Appellate Division. There he argued that his conviction of depraved indifference murder was legally insufficient because his conduct was, in fact, intentional, and therefore could not have been reckless. The Appellate Division affirmed Suarez's conviction, giving as its reason that "[t]he jury could have reasonably concluded, particularly if it credited portions of [Suarez's] testimony, that when [he] inflicted several knife wounds upon his girlfriend during a struggle, her death was not the result of any intentional conduct, but instead resulted from conduct satisfying the elements of depraved indifference murder" (People v Suarez, 13 AD3d 320, 320-321 [1st Dept 2004]).
A Judge of this Court subsequently granted Suarez leave to appeal. We reversed his conviction for depraved indifference *529 murder on the ground of legal insufficiency. In so doing, we observed that
"[Suarez's] acts in stabbing his victim in the throat, chest and abdomen did not, as a matter of law, constitute depraved indifference murder. Whether he intended to kill her or merely to cause her serious injuryand either of these findings, supported by sufficient evidence, might have been properly made by the jury[his] actions in no way reflected a depraved indifference to her fate" (People v Suarez, 6 NY3d 202, 216 [2005]).
Because the parties focused on the merits in their arguments before us and the Appellate Division "had no occasion to address the significant legal arguments bearing on the appropriate remedy," we remitted for "full briefing and consideration and for [the Appellate Division] to exercise its corrective action powers under CPL 470.20" (id.).
On remittal, the Appellate Division recognized that the "question of remedy [was] a critical and potentially recurring issue, given the widespread use of the depraved indifference murder statute" before "a recent series of Court of Appeals decisions that seek to provide a clearer understanding of the criminal liability contemplated by the term `depraved indifference' and thereby to foster appropriate use of criminal charges based upon this theory" (People v Suarez, 40 AD3d 143, 144 [1st Dept 2007] [citations omitted]). The court phrased the "primary" question on remittitur as
"whether, given [Suarez's] acquittal of intentional murder and the Court of Appeals' reversal of [his] conviction of depraved indifference murder, the Double Jeopardy Clauses of the Federal and State Constitutions, New York Criminal Procedure Law double jeopardy provisions and/or the doctrine of collateral estoppel bar [Suarez] from now being tried for intentional manslaughter in the first degree, a charge included in the indictment, and submitted to but not considered by the jury" (id. at 145-146).
With one Justice dissenting, the Appellate Division concluded that there was no constitutional, statutory or collateral estoppel bar to Suarez's retrial for intentional manslaughter.
The court first remarked that the "tenor of the Court of Appeals' decision in [Suarez] [was] that the trial court erroneously *530 submitted the depraved indifference murder count to the jury, since it was not supported by legally sufficient evidence" (id. at 146). This "trial error, in combination with New York's `acquit first' rule," which mandates how "a jury must be charged to conduct its deliberations when lesser included offenses are submittedi.e., the offenses must be considered in decreasing order of culpability, acquittal of all greater offenses before consideration of any lesser included offenses"foreclosed the jury from reaching the charge of intentional manslaughter (id.). But for the trial judge's error, the Appellate Division opined, "the jury would have been required to consider intentional manslaughter once it acquitted [Suarez] of intentional murder" (id. at 147). The court analogized what had happened to "a mistrial or partial verdict situation," in which "a verdict on the charge was never reached" and therefore future prosecution of that charge was permissible (id. at 148).
Further, the Appellate Division concluded that our decision in People v Biggs (1 NY3d 225 [2003]) did not suggest otherwise. In that case,
"after dismissal and acquittal of the respective intentional and the depraved indifference murder counts, the trial ended with the jury unable to reach a verdict on the `lesser included' second-degree manslaughter counts. There was no reversible trial error. Thus, the People were entitled to retry the defendant on those two counts pursuant to CPL 310.70 (2). However, in addition to those counts, the People sought, upon re-presentation to a grand jury, the new and more serious first-degree manslaughter counts. This violated several double jeopardy principles, since these counts could have been charged in the first indictment, but were neither charged nor submitted to the jury (see CPL 40.40 [2]),[[4]] they exposed the defendant to greater jeopardy than what he faced at the conclusion of the first trial, and they constituted the same offense, for double jeopardy purposes, as the intentional murder counts of which he was acquitted in the first trial . . . *531 "In the case at bar, the only similarity to Biggs is that there was also an acquittal of intentional murder counts charged in the alternative to depraved indifference murder counts. Here, [Suarez] was convicted of depraved indifference murder, trial error was found, the conviction overturned and the count dismissed, leaving unresolved the indicted manslaughter one count that, but for the trial error in submitting depraved indifference murder, would have been considered by the jury. Since, unlike in Biggs, the People only seek to prosecute this remaining unresolved count, as charged in the indictment, which they may do pursuant to CPL 40.30 (3), they are entitled to such relief. At this point, [Suarez] is subject to none of the perils present in Biggs" (Suarez, 40 AD3d at 149-150 [citations omitted]).
Additionally, the Appellate Division decided that collateral estoppel did not preclude Suarez's reprosecution for a variety of reasons.
The dissenting Justice, by contrast, considered our decision in Biggs to present an insurmountable obstacle to Suarez's retrial for intentional manslaughter. He also disputed the majority's analogy to mistrials and partial verdicts.
Suarez appealed as of right, arguing that the Appellate Division had contravened our remittitur by "downgrad[ing]" the ground of reversal of his conviction from legal insufficiency to trial error. Concluding that "substantial grounds" did not exist to support Suarez's position, we dismissed the appeal on our own motion (see Karger, Powers of the New York Court of Appeals § 5:30, at 193-194 [3d ed rev]).
With his retrial for first-degree manslaughter looming, Suarez commenced this CPLR article 78 proceeding in the Appellate Division. A different panel denied Suarez's application and dismissed his petition without opinion, simply citing the prior panel's decision (see Matter of Suarez v Byrne, 40 AD3d 546 [1st Dept 2007]). Suarez then appealed to us as of right on constitutional grounds pursuant to CPLR 5601 (b) (1).

II.
The Double Jeopardy Clauses of the State and Federal Constitutions safeguard a defendant from twice being prosecuted for the same offense (see NY Const, art I, § 6; US Const 5th Amend). "The underlying idea" is, in the familiar words of *532 Justice Black, "deeply ingrained in at least the Anglo-American system of jurisprudence"; namely,
"that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty" (Green v United States, 355 US 184, 187-188 [1957]).
The prohibition against double jeopardy also recognizes an accused's "valued right to have his trial completed by a particular tribunal" (Wade v Hunter, 336 US 684, 689 [1949]; People v Ferguson, 67 NY2d 383, 388 [1986]).
In keeping with these "underlying idea[s]," the United States Supreme Court has interpreted the Double Jeopardy Clause to bar the government from prosecuting a person for the same offense after an acquittal or a conviction; or from imposing multiple punishments for the same offense in successive proceedings (North Carolina v Pearce, 395 US 711, 717 [1969], overruled in part on other grounds by Alabama v Smith, 490 US 794 [1989]). An acquittal may be implicit (In re Nielsen, 131 US 176, 190 [1889] ["If a conviction might have been had, and was not, there was an implied acquittal"]; Green, 355 US at 190-191; Price v Georgia, 398 US 323, 328-329 [1970]). The implied acquittal bar to reprosecution presupposes that the first jury "was given a full opportunity to return a verdict" on the particular charge that the prosecutor seeks to advance in the second trial (Green, 355 US at 191; see also Price, 398 US at 329; People v Jackson, 20 NY2d 440, 452 [1967], cert denied 391 US 928 [1968]).
In order to determine whether two different statutory offenses are the same for purposes of constitutional double jeopardy, we apply the Supreme Court's Blockburger or "same elements" test (see Blockburger v United States, 284 US 299 [1932]; People v Wood, 95 NY2d 509, 513 [2000]). Under Blockburger, two offenses are the same unless each requires proof of a fact the other does not.
A defendant who succeeds in having a conviction reversed on appeal may be retried for the same offense without contravening double jeopardy principles (United States v Ball, 163 US *533 662, 671-672 [1896]). The Supreme Court, however, has "[c]arv[ed] out a narrow exception to the general rule established in Ball," holding that "`the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient'" (Anderson v Mullin, 327 F3d 1148, 1155 [10th Cir 2003], quoting Burks v United States, 437 US 1, 18 [1978]; see also Biggs, 1 NY3d at 229 ["(D)ismissal of a count due to insufficient evidence is tantamount to an acquittal for purposes of double jeopardy and protects a defendant against additional prosecution for such count" (emphasis added)]; People v Mayo, 48 NY2d 245, 249 [1979] ["(T)he trial court's decision to withdraw the first degree robbery count from the jury's consideration on the ground of insufficient evidence was equivalent to an acquittal and therefore operated as a bar to any further prosecution of that charge"]). As the Supreme Court has explained,
"While different theories have been advanced to support the permissibility of retrial,[5] of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, *534 therefore, the practice of retrial serves defendants' rights as well as society's interest" (United States v Tateo, 377 US 463, 466 [1964]).
Further, where there is a mistrial declared "following the jury's inability to reach a verdict, . . . under settled double jeopardy principles[ ] there could be no objection to the bringing of a second criminal proceeding" (Mayo, 48 NY2d at 249-250, citing United States v Perez, 9 Wheat [22 US] 579 [1824]; United States v Scott, 437 US 82, 92-94 [1978]; Arizona v Washington, 434 US 497 [1978]; Matter of Nolan v Court of Gen. Sessions of County of N.Y., 11 NY2d 114, 119 [1962]; see also Richardson v United States, 468 US 317, 326 [1984] ["(J)eopardy does not terminate when the jury is discharged because it is unable to agree"]). Nor is there a double jeopardy bar to retrial when a mistrial is granted because of "manifest necessity" or with defendant's consent (Perez, 9 Wheat [22 US] at 580; Matter of Davis v Brown, 87 NY2d 626, 630 [1996]).
The Double Jeopardy Clauses in the State and Federal Constitutions are nearly identically worded, and we have never suggested that state constitutional double jeopardy protection differs from its federal counterpart. The Legislature, however, has enacted statutory double jeopardy provisions offering broader protection than the Federal Constitution requires (see CPL art 40; People v Latham, 83 NY2d 233, 237 [1994]).
Finally, counts of intentional and depraved indifference murder must be submitted to the jury in the alternative because they are inconsistent: a person cannot at the same time act intentionally and recklessly with respect to the same result namely, death (People v Gallagher, 69 NY2d 525, 529 [1987]; CPL 300.30 [5]). In addition, under our mandatory "acquit-first" instruction, a jury must deliberate on charges in decreasing order of culpability, unanimously acquitting on the more serious crime before considering any lesser included offense (People v Helliger, 96 NY2d 462, 466 [2001]; People v Boettcher, 69 NY2d 174 [1987]; CPL 300.50 [4]). Where there are inconsistent counts, the jury must acquit of the greater counts before considering any lesser included count, and must cease deliberations upon finding the defendant guilty of one of the crimes submitted (People v Johnson, 87 NY2d 357, 360 [1996]). In endorsing the "acquit-first" approach, we sought to minimize compromise verdicts, and took into account the effect on double jeopardy (Boettcher, 69 NY2d at 182, citing Green, 355 US at 190-191).

*535 Biggs and Blockburger

In light of the above-stated general principles of federal and New York law, Suarez insists that his case is "materially indistinguishable" from Biggs, where we concluded that constitutional double jeopardy prohibited the defendant's prosecution for intentional manslaughter. The indictment in Biggs charged the defendant with two counts of first-degree murder and four counts of second-degree murder (two counts each of intentional and depraved indifference murder) in connection with the shooting deaths of two people. As we noted in our opinion, "[b]efore the case was submitted to the jury, the court repeatedly advised the parties that there was insufficient evidence of intentional murder" and that "the evidence was consistent with a depraved act" because the two people killed were not intended victims (Biggs, 1 NY3d at 227 [emphasis added]).
Consistent with his view of the evidence, the trial judge ultimately dismissed the intentional murder counts; and delivered a charge to the jury consisting of two counts of depraved indifference murder and, at defense counsel's request, two counts of second-degree (reckless) manslaughter as a lesser included offense of depraved indifference murder. When the jury reached an impasse, the judge took a partial verdict: the jury acquitted Biggs of both counts of depraved indifference murder, but deadlocked on the two counts of second-degree manslaughter. The jury resumed deliberations but could not reach a unanimous verdict on the reckless manslaughter charges (splitting seven to five for acquittal), and so the judge declared a mistrial.
Biggs was subsequently arraigned on a new indictment charging him with both first-degree and second-degree manslaughter. The trial judge ruled that the new charges were not barred by double jeopardy because intentional manslaughter "was not in the original indictment and was never considered by the jury." At his second trial, Biggs was convicted of both counts of first-degree manslaughter. He took an appeal.
The Appellate Division affirmed Biggs's conviction, holding that because first-degree manslaughter "was neither contained in the original indictment nor considered as a lesser included offense," Biggs was not "implicitly acquitted of that crime as a consequence of his first trial," and therefore his prosecution for this crime "was not barred by the constitutional prohibition against double jeopardy" (People v Biggs, 298 AD2d 398, 399 *536 [2d Dept 2002] [internal quotation marks and citation omitted]).
Biggs also argued that the second trial violated statutory double jeopardy, which generally prohibits successive prosecutions for "two offenses based upon the same act or criminal transaction" (CPL 40.20 [2]). The Appellate Division concluded that this "contention [was] unpreserved for appellate review, and . . . decline[d] to reach it in the exercise of . . . interest of justice jurisdiction" (298 AD2d at 399 [citation omitted]).
In his appeal to us, Biggs asserted that there was "no plausible reading of the record that would establish that the [trial judge] was distinguishing between an intent to kill and an intent to cause serious physical injury" when he expressed skepticism about the sufficiency of the evidence of intent. If that had been the case, Biggs continued,
"under CPL 300.30, [the court] was required to substitute manslaughter in the first degree, the `greatest lesser included offense which is supported by legally sufficient trial evidence,' for the intentional murder counts at the first trial, something that was neither requested by the People nor done sua sponte by the court. Indeed, if the People had wanted to urge this distinction, the time to do so was at the first trial, when the court could have submitted first-degree manslaughter to the jury. It cannot be the case that the prosecution is allowed, for strategic purposes, to decline to ask for an appropriate lesser-included offense and hope that the jury will convict of depraved indifference murder, and then seek a new indictment charging first-degree manslaughter" (emphasis added).
We reversed. First, we concluded that the trial judge's "withdrawal of the intentional murder counts from the jury's consideration on the ground [of] insufficient evidence to support those charges" was an acquittal for purposes of constitutional double jeopardy analysis (Biggs, 1 NY3d at 227, 229). Next, we decided that under the Blockburger test, intentional murder in the second degree and first-degree manslaughter are the same offense. As a consequence, "since [Biggs] was acquitted of the intentional murder charges at his first trial, and manslaughter in the first degree is the same offense as murder in the second degree under Blockburger, the Double Jeopardy Clauses of both the Federal and State Constitutions precluded *537 [his] subsequent indictment and prosecution for first degree manslaughter" (id. at 231).
There is a critical difference between this case and Biggs, commanding a different outcome: here, the charge of intentional manslaughter was submitted to the jury in Suarez's first trial,[6] and the jury, having been given an "acquit-first" instruction and having convicted Suarez of the higher count of depraved indifference murder, never reachedi.e., did not have "a full opportunity to return a verdict" on (Green, 355 US at 191)Suarez's guilt or innocence of this crime (see People v Charles, 78 NY2d 1044, 1047 [1991] [where jury, as instructed, did not consider remaining counts after finding defendant guilty on first count, retrial on remaining counts not prohibited because jeopardy never terminated as to those counts]; Jackson, 20 NY2d at 452 [felony murder conviction at second trial proper because jury did not have "full opportunity" to consider felony murder at first trial]).
As the Appellate Division pointed out, the circumstances in this case are analogous to a mistrial. And Suarez himself acknowledges that if, for example, the jury had acquitted him of depraved indifference murder and deadlocked on the intentional manslaughter count, he could be retried for the latter crime. There is no basis in case law or in logic for treating what happened here any differently. The major justification for permitting retrial after a jury deadlock (or appellate reversal of a conviction) is, as one commentator has put it, "the practical importance of preventing every trial defect from conferring immunity upon the accused" (Ponsoldt, When Guilt Should be Irrelevant: Government Overreaching as a Bar to Reprosecution under the Double Jeopardy Clause after Oregon v. Kennedy, 69 Cornell L Rev 76, 88, quoting Schulhofer, Jeopardy and Mistrials, 125 U Pa L Rev 449, 457, citing Tateo, 377 US at 466). If this societal interest is strong enough to outweigh the "embarrassment, expense and ordeal and . . . continuing state of anxiety and insecurity" (Green, 355 US at 187) endured by an accused subject to retrial after a deadlockwhere the People are afforded a chance to convince a new jury to convict after having conspicuously failed to persuade the original jury to do soit surely warrants a second trial on a charge that the first jury did *538 not reach and therefore had no opportunity whatsoever to resolve.
In short, there is no doubt that we were correct when we said in Biggs that second-degree intentional murder and first-degree manslaughter are the same offense when evaluated under the Blockburger test. But this is beside the point here. We are not faced with a situation where we must compare the elements of a statutory offense of which the defendant has been convicted or acquitted (as in Biggs) to see if they are the same as the elements of a different statutory offense that the prosecutor seeks to try against the defendant for the first time in a subsequent trial. This case unquestionably involves the identical offense in both trialsfirst-degree manslaughter; however, because the jury was charged with intentional manslaughter in the first trial and did not have a full opportunity to consider it, constitutional double jeopardy poses no impediment to Suarez's retrial for this crime.

Burks and Trial Error
Suarez complains that the Appellate Division's decision blurs the distinction between reversals for legal insufficiency and trial error, asking "[I]f Mr. Suarez can be retried because his legal-insufficiency dismissal was merely trial error, then why not Mr. Burks?" In Burks, the Supreme Court "clarif[ied] the distinction between the double jeopardy effects of appellate reversal for insufficient evidence and appellate reversal for trial error," concluding that the Double Jeopardy Clause rules out a second trial for an offense for which the reviewing court has found insufficient evidence (Anderson, 327 F3d at 1155). As a result, the answer to Suarez's question is that he is to be retried for intentional manslaughter, not depraved indifference murder, the only count we reversed for evidentiary insufficiency. By contrast, in Burks the prosecutor sought to try the defendant for violating a provision of the United States Code after his conviction for violating this very same provision had been reversed on the ground of legal insufficiency.
As we stated in Biggs, citing Burks, "dismissal of a count due to insufficient evidence is tantamount to an acquittal for purposes of double jeopardy and protects a defendant against additional prosecution for such count" (Biggs, 1 NY3d at 229 [emphasis added]; see also Anderson, 327 F3d at 1155 [noting that Supreme Court in Greene v Massey (437 US 19, 25 n 7 [1978]) "declined to reach the question of whether the Burks *539 exception barred a subsequent prosecution for a lesser included offense"]). Upon Suarez's appeal of his conviction, we concluded that there was insufficient evidence of depraved indifference murder as a matter of law; we also stated that there was, in fact, sufficient evidence to support an intent to kill (although the jury acquitted Suarez of intentional murder and he therefore may not be retried for this crime) or to cause serious physical injury (Suarez, 6 NY3d at 216). In sum, while Burks precludes Suarez's retrial for depraved indifference murder, it does not stand in the way of his retrial for intentional manslaughter.

Implicit Acquittal
Alternatively, Suarez contends that "once the jury found [him] guilty of depraved indifference murder, it could not then find [him] guilty of intentional manslaughter, because they are inconsistent counts"; or, expressed another way "[f]inding [Suarez] guilty of depraved indifference murder, the jury necessarily acquitted him of intentional manslaughter." Suarez relies on the Supreme Court's decision in Green, and the decision in People v Robinson (145 AD2d 184 [4th Dept 1989], affd 75 NY2d 879 [1990]) to make this point.
In Green, the Supreme Court inferred that there was an acquittal on a greater offense after the jury returned a guilty verdict on a lesser charge and was silent as to its verdict on the greater offense. The Court considered the jury's silence to be significant because it was possible that the jury had unanimously acquitted the defendant of that charge. Moreover, the Court was sensitive to the hardship that retrial on the higher degree of a crime would place on a defendant's right to appeal: "Reduced to plain terms, the Government contends that in order to secure the reversal of an erroneous conviction of one offense, a defendant must surrender his valid defense of former jeopardy not only on that offense but also on a different offense for which he was not convicted and which was not involved in his appeal" (Green, 355 US at 193).
Retrial imposes no like hardship on Suarez, who was acquitted of one of the higher counts (intentional murder), and whose conviction for the other (depraved indifference murder) was reversed on appeal for legal insufficiency. Further, because of the trial judge's instruction, there is no uncertainty, as was the case in Green, as to how the jury went about considering the four counts submitted. There is no basis for implying an acquittal from silence, because the instruction forced the jury to resolve *540 the counts in a particular order and to cease deliberations upon finding Suarez guilty. Finally, as we have previously noted, implied acquittal presupposes that the first jury "was given a full opportunity to return a verdict" on the charge at issue, and that did not happen here (id. at 191).
In Robinson, the Appellate Division reversed a defendant's conviction for intentional manslaughter, submitted to the jury as a lesser included offense of intentional murder, because the judge failed to submit counts of intentional murder and depraved indifference murder to the jury in the alternative as mandated by Gallagher. We affirmed "for the reasons stated in" the Appellate Division's opinion (Robinson, 75 NY2d at 881), which includes dictum plausibly understood to mean that a defendant cannot be convicted of charges requiring different mental states, even as to different resultsthat is, the infliction of serious physical injury in the case of first-degree manslaughter[7] and death in the case of depraved indifference murder (see Sweet v Bennett, 353 F3d 135, 143-148 [2d Cir 2003, Walker, J., concurring]). We do not endorse this reading of Robinson, which puts it at odds with our later decision in People v Trappier (87 NY2d 55 [1995]), although we tried to distinguish Robinson in Trappier (see also People v Carter, 7 NY3d 875, 876-877 [2006] [noting that trial counsel might have made an argument based on Robinson, "but in light of our later decision in (Trappier) that argument was not so compelling that a failure to make it amounted to ineffective assistance of counsel"]).
Trappier called upon us to consider whether a defendant could be convicted of attempted assault in the first degree and reckless endangerment in the first degree for shooting his victim. At the outset of our opinion, we defined the issue as follows: "Can a defendant intend to cause serious physical injury to another person and at the same time recklessly create a grave risk that death will result from that conduct? We conclude that the two mental states are not mutually exclusive when applied to different outcomes" (87 NY2d at 57). We decided that, because the result was different for each offense, the defendant could have different mental states as to these different results. Thus, the defendant could have recklessly caused a grave risk of death while intentionally inflicting serious physical injury (87 NY2d *541 at 58-59). Applying that rationale in this case, the first jury's conviction of Suarez for depraved indifference murder would not be inconsistent with a subsequent conviction for intentional manslaughter.
In conclusion, constitutional double jeopardy principles do not bar Suarez's retrial for intentional manslaughter. Although the jury was charged with intentional manslaughter in the first trial, the jurors did not have a full opportunity to consider Suarez's guilt or innocence of this crime because of the order in which they were instructed to decide the counts, and their conviction of Suarez of the more serious crime of depraved indifference murder. Moreover, depraved indifference murder and intentional manslaughter are not inconsistent counts: a defendant can recklessly cause a grave risk of death while intentionally inflicting serious physical injury. Accordingly, the jury did not implicitly acquit Suarez of intentional manslaughter when it convicted him of depraved indifference murder. Suarez's remaining arguments, which relate to collateral estoppel and statutory double jeopardy, are without merit.
Accordingly, the judgment of the Appellate Division should be affirmed, without costs.
Judgment affirmed, without costs.
NOTES
[1] The remaining count in the indictmentfourth-degree criminal possession of a weapon, a class A misdemeanorwas dismissed at the prosecution's request at the close of its case.
[2] The verdict sheet was divided into vertical columns. The column headings, reading from left to right, were "Count Number," "Crime," "Guilty," and "Not Guilty." The verdict sheet also displayed "Count Number[s]" and their corresponding "Crime[s]" from top to bottom as follows: "Count Number 1 Murder in the Second Degree (Intentional Homicide) and Count Number 2 Manslaughter in the First Degree (Extreme Emotional Disturbance) or Count Number 3 Murder in the Second Degree (Depraved Indifference Homicide) or Count Number 4 Manslaughter in the First Degree (Intent to Cause Serious Physical Injury)" (emphasis added).
[3] On the verdict sheet, the word "Yes" was crossed out and initialed in the space in the "Guilty" column for "Count 2 Manslaughter in the First Degree (Extreme Emotional Disturbance)." In addition, there was a check mark in the space in the "Not Guilty" column for this count, which is apparently what the trial judge was referring to when he commented "It says not guilty on the verdict sheet anyway." The verdict sheet also showed a check mark in the space in the "Not Guilty" column across from "Count Number 4, Manslaughter in the First Degree (Intent to Cause Serious Physical Injury)." Suarez's attorney examined the verdict sheet before the verdict was taken, and did not ask the judge to question the jury about either of these check marks. Although Suarez argues that the check mark on the verdict sheet amounts to an acquittal of intentional manslaughter, a verdict must be announced in open court (CPL 1.20 [12]). Marks on verdict sheets are not verdicts (see Matter of Oliver v Justices of N.Y. Supreme Ct. of N.Y. County, 36 NY2d 53, 57 [1974]; People v Khalek, 91 NY2d 838, 840 [1997]).
[4] Criminal Procedure Law § 40.40 (2), New York's compulsory joinder statute, limits a prosecutor's authority to pursue charges that could have been joined in a prior indictment, but were neither indicted nor submitted as lesser included offenses.
[5] Historically,

"[m]ost courts regarded the new trial [after reversal of a conviction] as a second jeopardy but justified this on the ground that the appellant had `waived' his plea of former jeopardy by asking that the conviction be set aside. Other courts viewed the second trial as continuing the same jeopardy which had attached at the first trial by reasoning that jeopardy did not come to an end until the accused was acquitted or his conviction became final" (Green, 355 US at 189 [footnote omitted]).
[6] We agree with Suarez that, for purposes of constitutional double jeopardy analysis, it does not matter whether the count submitted to the jury was also in the indictment.
[7] The elements of first-degree manslaughter are (1) intent to cause serious physical injury to another person; and (2) causing the death of such person or a third person (Penal Law § 125.20 [1]).