THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALBERT SCERBO, Respondent. (Appeal No. 1.) [872 NYS2d 763]—

Appeal from an order of the Onondaga County Court (William D. Walsh, J.), entered November 27, 2007. The order, insofar as appealed from, granted those parts of the omnibus motion of defendant seeking dismissal of counts 9 through 12, 27, and 28 of the indictment.

It is hereby ordered that the order so appealed from is unanimously modified on the law by denying those parts of the motion seeking dismissal of counts 11 and 12 of the indictment and reinstating those counts of the indictment and as modified the order is affirmed, and the matter is remitted to Onondaga County Court for further proceedings on counts 11 and 12 of the indictment.

Memorandum: In appeal No. 1, the People appeal from an order insofar as it granted those parts of defendant's omnibus motion seeking dismissal of counts 9 through 12, 27, and 28 of the indictment. In appeal No. 2, the People appeal from an order insofar as it denied their motion to reopen the CPL 330.40 hearing and granted the motion of defendant pursuant to CPL 330.30 to set aside the verdict as the product of improper influence and for a new trial.

With respect to appeal No. 1, we note at the outset that we reject the contention of defendant that the appeal should be dismissed on the ground that CPL 450.20 (1) is limited to interlocutory appeals, and the People here proceeded to trial before

perfecting their appeal from the pretrial order. Pursuant to the express terms of CPL 450.20 (1), the People may take an appeal from an "order dismissing an accusatory instrument or a count thereof," but there is no provision specifying that subdivision (1) is limited to interlocutory appeals. In the event, however, that the People take an appeal from an "order reducing a count or counts of an indictment" (CPL 450.20 [1-a]), the "effectiveness of the order" is stayed (CPL 210.20 [6] [c]). The Legislature included the stay provision in fairness to the People when it amended CPL 210.20, "[r]ecognizing . . . the possibility that a defendant might be tempted to exercise the statutory right to plead guilty to the reduced indictment before the People had a fair chance to respond" (*People v Jackson*, 87 NY2d 782, 787 [1996]). The Legislature, however, apparently did not share those same concerns for cases in which a court dismisses a count or counts of an indictment pursuant to CPL 450.20 (1) other than one charging murder in the first degree, inasmuch as the Legislature failed to include a stay provision for such dismissal in CPL 210.20 (6) (c) (*see People v Moquin*, 77 NY2d 449, 455-456 [1991], *rearg denied* 78 NY2d 952 [1991]).

Turning to the merits of the order in appeal No. 1, we conclude that County Court properly granted those parts of defendant's omnibus motion seeking dismissal of counts 9 and 27, charging course of sexual conduct against a child in the second degree (Penal Law § 130.80 [1] [a]), and counts 10 and 28, charging endangering the welfare of a child (§ 260.10 [1]), based on the legal insufficiency of the evidence. In determining whether to dismiss counts of an indictment based on the legal insufficiency of the evidence before the grand jury, the court must determine "whether the evidence, viewed in the light most favorable to the People, if unexplained and uncontradicted, would be sufficient to warrant conviction by a trial jury" (*People v Manini*, 79 NY2d 561, 568-569 [1992]). The grand jury "must have before it evidence legally sufficient to establish a prima facie case, including all the elements of the crime, and reasonable cause to believe that the accused committed the offense to be charged" (*People v Jensen*, 86 NY2d 248, 251-252 [1995]).

Here, Jane Doe #5 and Jane Doe #14 each testified that defendant, their music teacher, touched them on their inner thighs and stomachs, over their clothing, when they sat on his lap while watching a video in class. Sexual conduct includes sexual contact (*see* Penal Law § 130.00 [10]), which is defined as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party" (§ 130.00 [3]). There was no testimony that

would support an inference that defendant touched those victims for the purpose of gratifying his sexual desire to support the counts of course of sexual conduct against a child in the second degree (*see* § 130.80 [1] [a]; *cf. People v Gray*, 201 AD2d 961, 962 [1994], *lv denied* 83 NY2d 1003 [1994]). Indeed, any such conclusion by the grand jury would necessarily be based on "impermissible speculation" (*People v Jackson*, 65 NY2d 265, 272 [1985]). The counts of endangering the welfare of a child likewise were properly dismissed inasmuch as they were based on the same testimony (*see* Penal Law § 260.10 [1]; *People v Guerra*, 178 AD2d 434, 435 [1991]).

The court erred, however, in granting those parts of defendant's omnibus motion seeking dismissal of counts 11 and 12 based on defects in the grand jury proceeding, and we therefore modify the order in appeal No. 1 accordingly. Dismissal on that ground is "limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the Grand Jury" (*People v Huston*, 88 NY2d 400, 409 [1996]). "Typically, the submission of some inadmissible evidence will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment" (*id.*). Here, although some of the grand jury testimony of a teacher's assistant was improper, we conclude that the remaining evidence, particularly that of Jane Doe #6, was sufficient to sustain counts 11 and 12 of the indictment.

With respect to appeal No. 2, we reject the contention of the People that the court erred in setting aside the verdict and granting a new trial. It is well settled that "a jury verdict may not be impeached by proof of the tenor of [the jury's] deliberations, but it may be upon a showing of improper influence" (*People v Brown*, 48 NY2d 388, 393 [1979]). Improper influence includes jury conduct that tends to place the jury in possession of evidence not introduced at trial (*see People v Arnold*, 96 NY2d 358, 364-365 [2001]; *Brown*, 48 NY2d at 393). In determining whether a jury has been subjected to improper influence, the court must examine the facts "to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered" (*Brown*, 48 NY2d at 394). "Overall, a reversible error can materialize from (1) jurors conducting personal specialized assessments not within the common ken of juror experience and knowledge (2) concerning a material issue in the case, and (3) communicating that expert opinion to the rest of the jury panel with the force of private, untested truth as though it were evidence" (*People v Maragh*, 94 NY2d 569, 574 [2000]; *see generally Arnold*, 96 NY2d at 367).

Here, the court properly instructed the jurors that they should use their common sense, knowledge, and experience in evaluating the evidence but that, if a juror possessed special expertise related to a material issue in the case, the juror could not rely on that special expertise "to inject into your deliberations either a fact that is not in evidence or inferable from the evidence, or an opinion that could not be drawn from the evidence by a person without that special expertise." Despite that instruction, the evidence at the post-trial hearing on defendant's CPL 330.30 motion established that two jurors, both of whom were educators, informed the other jurors that teachers are trained or informed never to touch students. That information is not within the common understanding of the average juror, and the issue whether it was appropriate for defendant to allow his female students to sit on his lap during class was a material issue in the case. Indeed, the record establishes that at least one juror was swayed by the opinions of the two jurors in voting to convict defendant. As the court concluded in granting defendant's motion, once a juror was "convinced that defendant knowingly violated some professional ethic by allowing students to sit on his lap, [the juror] was then able to make the next logical step of concluding that he did so only for the purpose of committing the crimes under consideration." Reversal was required under the circumstances of this case because the "jurors [were] exposed to prejudicial, extra-record facts" (*Arnold*, 96 NY2d at 364). Present—Hurlbutt, J.P., Centra, Fahey and Peradotto, JJ.