■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERT SCERBO, Appellant. [903 NYS2d 621]—

Appeal from a judgment of the Onondaga County Court (William D. Walsh, J.), rendered August 12, 2009. The judgment convicted defendant, upon a nonjury verdict, of sexual abuse in the first degree and endangering the welfare of a child.

It is hereby ordered that the judgment so appealed from is affirmed and the matter is remitted to Onondaga County Court for proceedings pursuant to CPL 460.50 (5).

Memorandum: Defendant appeals from a judgment convicting him following a bench trial of sexual abuse in the first degree (Penal Law § 130.65 [3]) and endangering the welfare of a child (§ 260.10 [1]) after the verdict following his first trial was set aside by County Court based on juror misconduct (*People v Scerbo*, 59 AD3d 1066 [2009], *lv denied* 12 NY3d 821 [2009]). Defendant, a music teacher, was charged in an indictment with 35 counts based on allegations that he engaged in sexual contact with 17 female students between the ages of 6 and 15 over a four-year period. At the first trial, County Court dismissed several counts of the indictment and defendant was convicted of only two of the remaining counts, which concerned Jane Doe No. 1. The People took an appeal, whereupon we, inter alia, agreed with the court that juror misconduct necessitated a new trial on the two counts with respect to Jane Doe No. 1 (*id.* at 1068). At the second trial, the court found defendant guilty of

the two counts with respect to Jane Doe No. 1 (hereafter, victim).

Defendant contends that the evidence from both the first and second trials is legally insufficient to establish sexual gratification and thus that reversal is required. We note at the outset that we reject the People's contention that we do not have the authority to review the legal sufficiency of the evidence at the first trial. The Double Jeopardy Clause precludes a second trial if the evidence from the first trial is determined by the reviewing court to be legally insufficient (*see Burks v United States*, 437 US 1, 18 [1978]; *Matter of Suarez v Byrne*, 10 NY3d 523, 532-533 [2008], *rearg denied* 11 NY3d 753 [2008]). Here, the verdict from the first trial was set aside on the ground of juror misconduct and, because the prior appeal was taken by the People, our review pursuant to CPL 470.15 (1) was limited to any question of law or fact that may have adversely affected the appellant, i.e., the People. Thus, on the prior appeal defendant was prohibited from raising an alternative ground for affirmance, including whether the evidence from the first trial was legally insufficient (*see People v Karp*, 76 NY2d 1006, 1008-1009 [1990]; *People v Goodfriend*, 64 NY2d 695, 697-698 [1984]; *People v Woodruff*, 4 AD3d 770, 773 [2004]).

We also reject the People's contention that defendant failed to preserve for our review his contention that the evidence from the first trial was legally insufficient with respect to sexual gratification in connection with the conviction of sexual abuse and endangering the welfare of a child. Although defendant did not raise that ground in his motion for a trial order of dismissal during the first trial, his "contention is nevertheless reviewable for purposes of double jeopardy analysis on appeal from the judgment of conviction upon retrial" (*People v Smith*, 8 AD3d 965, 966 [2004]). We conclude, however, that the evidence was legally sufficient at the first trial with respect to the two crimes of which defendant was convicted, which were the same two crimes of which he was convicted following the second trial (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]), and thus "the retrial did not violate the prohibition against double jeopardy" (*Smith*, 8 AD3d at 966). A person is guilty of sexual abuse in the first degree under Penal Law § 130.65 (3) "when he or she subjects another person to sexual contact . . . [w]hen the other person is less than eleven years old." Sexual contact is defined as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the

actor, whether directly or through clothing" (§ 130.00 [3]). The allegation of sexual gratification also formed the basis of endangering the welfare of a child, the other count of which defendant was convicted at the first trial (*see People v Guerra*, 178 AD2d 434, 435 [1991]). A person is guilty of endangering the welfare of a child under Penal Law § 260.10 (1) when "[h]e [or she] knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child" less than 17 years old.

With respect to the legal sufficiency of the evidence at the first trial concerning the element of sexual gratification, the evidence established that defendant touched the victim's stomach, then moved his hands to the victim's vaginal area and moved his hand as he touched that area. Sexual gratification may be inferred from defendant's conduct (*see People v Graves*, 8 AD3d 1045 [2004], *lv denied* 3 NY3d 674 [2004]; *People v Anthony D.*, 259 AD2d 1011 [1999], *lv denied* 93 NY2d 1001 [1999]). Although defendant testified that he did not knowingly have sexual contact with any of the children and thus contends that any contact was merely incidental, the jury was entitled to discredit that testimony. Indeed, "the fact that the evidence might be subject to an interpretation different from that found by the jury does not mean that the People failed to prove their case beyond a reasonable doubt" (*People v Shoemaker*, 227 AD2d 720, 721 [1996], *lv denied* 88 NY2d 1024 [1996]). Because the evidence at the first trial was legally sufficient with respect to the conviction of sexual abuse, it necessarily also was legally sufficient with respect to the conviction of endangering the welfare of a child.

At the second trial, defendant preserved for our review his contention concerning the alleged legal insufficiency of the evidence with respect to the sexual contact element, i.e., sexual gratification, of the count of sexual abuse in the first degree, but he did not move for a trial order of dismissal with respect to endangering the welfare of a child (*see People v Gray*, 86 NY2d 10, 19 [1995]). In any event, the evidence at the second trial is legally sufficient to establish sexual gratification on both counts. The evidence at the second trial established that defendant placed his hand on the victim's vaginal area, and that he touched the victim's stomach before touching that area. Again, we note that defendant's sexual gratification may be inferred from defendant's touching of the child's intimate area (*see Graves*, 8 AD3d at 1045; *Anthony D.*, 259 AD2d at 1011).

Defendant further contends that the verdict from the first trial was against the weight of the evidence, as is the verdict

from the second trial. Contrary to the People's contention, we likewise have the authority to review the weight of the evidence at the first trial in order to determine whether defendant's double jeopardy rights were violated. That is, if the verdict were against the weight of the evidence at the first trial, a retrial would be barred (*see* CPL 470.20 [5]; *People v Romero*, 7 NY3d 633, 644 n 2 [2006]). Viewing the evidence in light of the elements of the crimes as charged to the jury in the first trial and, with respect to the second trial, in light of the elements of the crimes in the bench trial (*see People v Danielson*, 9 NY3d 342, 349 [2007]), we conclude that the verdicts are not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

According to the testimony of defendant at both trials, he did not have sexual contact with the victim, nor did he have her sit on his lap for sexual gratification. Based on that credible testimony, and under the circumstances of this case, we conclude that a finding other than guilt would not be unreasonable here, and we therefore must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*id.* at 495; *see Romero*, 7 NY3d at 643). We are mindful, however, that "[g]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*Bleakley*, 69 NY2d at 495).

There was evidence presented at both trials that defendant would sit in the back of his classroom when movies were played and that at least some of the lights were turned off and the door was shut. Contrary to the People's contention, we find that evidence innocuous. First, when a teacher and his or her students all are faced in the same direction in order to watch a movie, most teachers logically would be seated in the back of the classroom to keep an eye on the students, to ensure that they do not misbehave. Second, it is of course logical that the classroom lights would be turned off while a movie was played. Third, it is logical that a teacher would close the classroom door when a movie was played or, indeed, during a music class, to prevent excessive noise from interfering with other classes.

The victim, unlike many of the other girls who testified at the first trial, testified that she sat on defendant's lap only one time. She further testified that defendant was her teacher for two years and that he placed her hand on her private area that one time, which made her both "mad" and "sad." After that incident, she did not again sit on his lap. At the first trial, the additional evidence that lent credibility to the victim's testimony was the testimony of a former secretary at the school. She testi-

fied that she went to defendant's classroom during one of defendant's classes and that the door was locked. When she asked defendant why his classroom door was locked, he did not answer her question. Moreover, one of defendant's students testified that, when defendant called on her to sit on his lap, she informed him that her father had told her not to do so. In response, defendant stated, "I told you not to tell your parents." In addition, defendant did not address the specific allegations of the victim at the first trial, and simply stated that he did not have sexual contact with any of the children.

At the second trial, the additional evidence that lent credibility to the victim's testimony was again the testimony of the former school secretary concerning defendant's failure to explain why the classroom door was locked. In addition, the victim testified that at times students would ask defendant if they could sit in his lap, but at other times defendant would call on students to sit with him. That testimony of the victim contradicted the testimony of defendant that he did not encourage the students to sit on his lap. Also at the second trial, defendant testified that he had sustained an injury to his left leg in 1996 that continued to cause him pain and discomfort. He testified that the victim jumped on his left knee when she sat on his lap, which caused him to experience a "great deal of discomfort." He therefore moved her to his right knee, but he denied that he knowingly came in contact with her genital area. A logical trier of fact necessarily would question why defendant would allow children to sit on his lap given the level of discomfort in his leg. In addition, the victim did not state during her testimony that defendant had moved her from his left leg to his right leg.

Although, as previously noted, a different finding would not have been unreasonable, we cannot conclude that the triers of fact "failed to give the evidence the weight it should be accorded" (*id.* at 495). Finally, we reject defendant's contentions that the indictment was improperly amended and that the sentence is unduly harsh and severe.

All concur except Centra, J.P., who concurs in the result in the following memorandum.

Centra, J.P. (concurring). I concur in the result and in the majority's analysis of the issues with the exception of the preservation analysis of the legal sufficiency of the evidence at the first trial. Quoting from *People v Smith* (8 AD3d 965, 966 [2004]), the majority concludes that, despite the fact that defendant at the first trial failed to preserve for our review his contention with respect to the alleged legal insufficiency of the

evidence concerning sexual gratification, we may nevertheless review that contention " 'for purposes of double jeopardy analysis.' " It is well settled that a contention that double jeopardy rights were violated need not be preserved for our review (*see People v Michael*, 48 NY2d 1, 6-8 [1979]) but, in my view, a defendant must first preserve for our review the underlying issue concerning the alleged legal insufficiency of the evidence before we may determine whether the defendant's double jeopardy rights were violated (*see People v Farakesh*, 244 AD2d 568 [1997], *lv denied* 91 NY2d 1007 [1998]; *see generally People v Gray*, 86 NY2d 10, 19 [1995]). Present—Centra, J.P., Carni, Lindley, Green and Gorski, JJ.