# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1300.1**
**KA 11-00715**
PRESENT: SCUDDER, P.J., CENTRA, VALENTINO, WHALEN, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

               V                           MEMORANDUM AND ORDER

CURTIS L. MASON, DEFENDANT-APPELLANT.

---

MARY J. FAHEY, SYRACUSE, FOR DEFENDANT-APPELLANT.

BARRY L. PORSCH, DISTRICT ATTORNEY, WATERLOO, FOR RESPONDENT.

---

Appeal from a judgment of the Seneca County Court (Dennis F. Bender, J.), rendered March 28, 2011. The judgment convicted defendant, upon a jury verdict, of official misconduct.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed and the matter is remitted to Seneca County Court for proceedings pursuant to CPL 460.50 (5).

Memorandum: Defendant appeals from a judgment convicting him, following a second jury trial, of one count of official misconduct (Penal Law § 195.00 [1]). Following the first trial, County Court set aside the verdict finding him guilty of that offense based on the People's failure to disclose *Brady* and *Rosario* material. Defendant was thereafter convicted of the same offense following the second jury trial. Defendant contends that the court erred in admitting DNA evidence at his first and second trials. We reject that contention. The victim testified at both trials that defendant, a correction officer working at the correctional facility where the victim was housed, took the victim to a secluded area where he engaged in sexual conduct with the victim and thereafter ejaculated. Forensic investigators took swabs from the area, and two of the swabs tested positive for the presence of sperm. DNA profiles generated from the two swabs were compared to profiles generated from buccal swabs taken from defendant and the victim. Both samples were "consistent with DNA [of defendant] also mixed with DNA from at least one DNA donor, with [defendant] being . . . the major contributor." The victim was excluded as a potential donor with respect to both samples. Contrary to defendant's contention, the DNA evidence does not constitute *Molineux* evidence, i.e., evidence that defendant engaged in a sexual act with another inmate at a different time. Rather, it constitutes direct evidence of his guilt of the instant offense. As the court properly noted, "[a]lthough the two samples were obtained from the same location and thus they are mixed, it doesn't follow necessarily that the two samples arrived th[ere] through sexual acts committed at

the same time."  In our view, "[i]t cannot be trivialized as mere coincidence that [defendant's semen] was . . . recovered at the scene" of the alleged sexual encounter (*People v Gonzalez*, 193 AD2d 360, 361).  We thus conclude that the DNA evidence is direct and relevant evidence of the instant offense (*see generally People v Scarola*, 71 NY2d 769, 777; *People v Mirenda*, 23 NY2d 439, 453).

Defendant further contends that the verdict following the first trial was "against the weight of the evidence," but his sole contention with respect to "weight" is that the jury in the first trial could not have justifiably found him guilty of official misconduct yet have acquitted him of two counts of criminal sexual act in the third degree (Penal Law § 130.40 [1]) arising out of the same incident.  The People, in response, contend that defendant's challenge to the weight of the evidence at the first trial is not properly before this Court.  As a preliminary matter, we reject the People's contention.  A defendant who has been found guilty upon a retrial may still challenge the weight of the evidence at the first trial on the premise that, "if the verdict were against the weight of the evidence at the first trial, a retrial would [have been] barred" (*People v Scerbo*, 74 AD3d 1730, 1733, *lv denied* 15 NY3d 757; *see People v Romero*, 7 NY3d 633, 644 n 2).  In our view, however, defendant is not actually challenging the weight of the evidence but, rather, is contending that the verdict in the first trial was either repugnant or inconsistent.  That contention is not preserved for our review and thus is not properly before us inasmuch as defendant failed to object to the inconsistency of the verdict "*after* the verdict [was] rendered, but *before* the jury [was] discharged" (*People v Johnson*, 93 AD3d 408, 409, *lv denied* 19 NY3d 974, *petition for cert filed* Aug. 16, 2012 [emphasis added]; *see generally People v Alfaro*, 66 NY2d 985, 987).  Although defendant raised the theoretical possibility of an inconsistent verdict after the court took a partial verdict under the authority of CPL 310.70 (1) (b), the court properly concluded that defendant's objection was premature.  When the final verdict in the first trial was ultimately rendered, defendant failed to renew his objection (*see e.g. People v Hines*, 97 NY2d 56, 61, *rearg denied* 97 NY2d 678; *People v Russell*, 71 NY2d 1016, 1017-1018, *rearg dismissed* 79 NY2d 975; *People v Hardy*, 38 AD3d 1169, 1169-1170, *lv denied* 9 NY3d 865).  In any event, we conclude that the verdict was neither repugnant nor inconsistent because "there is a possible theory under which a split verdict could be legally permissible" (*People v Muhammad*, 17 NY3d 532, 540; *see generally People v Trappier*, 87 NY2d 55, 58; *People v Tucker*, 55 NY2d 1, 7, *rearg denied* 55 NY2d 1039).  "[T]he apparently illogical nature of the verdict——as opposed to its impossibility——[must be] viewed as a mistake, compromise or the exercise of mercy by the jury, none of which undermine[s] a verdict as a matter of law" (*Muhammad*, 17 NY3d at 540; *see People v Harris*, 98 AD3d 420, 420; *People v Abraham*, 94 AD3d 1332, 1333).

Entered:  December 21, 2012                     Frances E. Cafarell
                                                Clerk of the Court