People v Chrisley (2021 NY Slip Op 02699)





People v Chrisley


2021 NY Slip Op 02699


Decided on April 30, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 30, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, WINSLOW, AND DEJOSEPH, JJ.


1175 KA 19-01495

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOHN R. CHRISLEY, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ALLYSON L. KEHL-WIERZBOWSKI OF COUNSEL), FOR DEFENDANT-APPELLANT. 
LAWRENCE FRIEDMAN, DISTRICT ATTORNEY, BATAVIA (ROBERT J. SHOEMAKER OF COUNSEL), FOR RESPONDENT. 


 Appeal from an order of the Genesee County Court (Charles N. Zambito, J.), entered July 24, 2019. The order determined that defendant is a level two risk pursuant to the Sex Offender Registration Act. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Defendant appeals from an order determining that he is a level two risk pursuant to the Sex Offender Registration Act ([SORA] Correction Law § 168 et seq.). On a prior appeal, we determined that County Court had erred in assessing points for a continuing course of sexual misconduct on a theory that was not raised by the Board of Examiners of Sex Offenders (Board) or the People (People v Chrisley, 172 AD3d 1914, 1915-1916 [4th Dept 2019]). "The Board [had] recommended no point assessment under that category, and the People [had mistakenly] recommended that points be assessed under that category on the sole ground that, as indicted, defendant had committed two acts of sexual contact against the victim" (id. at 1915). The court, however, properly determined that "points could not be assessed for only two acts of sexual contact inasmuch as neither of [those] incidents involved 'an act of sexual intercourse, oral sexual conduct, anal sexual conduct, or aggravated sexual contact' " (id.). Relying on a third, uncharged incident, the court sua sponte assessed points under that category on the theory that defendant engaged in three or more acts of sexual contact with the victim over a period of at least two weeks (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 10 [2006] [Guidelines]).
Inasmuch as defendant was not provided notice that he would be assessed points as a result of a third uncharged incident and thus was not given a meaningful opportunity to respond, we concluded that he was denied his right to due process. After determining that defendant's remaining challenges to the risk level determination lacked merit, we reversed the order, vacated the risk level determination and remitted the matter to County Court for a new risk level determination, and a new hearing if necessary (Chrisley, 172 AD3d at 1916).
On remittal, defendant provided the court with a letter from his counselor wherein the counselor noted that, in the two years since his release, defendant had "actively engage[d]" in treatment; "routinely participate[d]" in treatment; and "ma[d]e positive changes to his life." In addition, defendant's risk level had also been recently assessed on three separate risk assessment instruments, the STATIC-99R, the STABLE-2007 and the ACUTE-2007. On each assessment, defendant had scored as a low risk. Based on his treatment of defendant and the scores on the recent assessments, the counselor opined that defendant was a "low risk for recidivism sexually, violently, and in general" and supported "the courts [sic] consideration for re-leveling of [defendant]."
At the subsequent SORA hearing, the court concluded that there was clear and convincing evidence of a third incident and assessed defendant 20 points under the category of continuing course of sexual misconduct. As a result, defendant's total risk assessment score was 110, making him a presumptive level three risk. The court, however, concluded that the information from the counselor justified a downward departure, and determined that defendant should be classified as a level two risk.
We agree with defendant that there is not clear and convincing evidence of a third incident of sexual contact. The evidence presented at the SORA hearing on that issue was the grand jury testimony of the victim's mother who stated that, on one occasion, the victim had been "fidgeting" while sitting on defendant's lap. Although defendant had told the victim to sit still, the mother removed the victim from his lap and told her to go play. Shortly thereafter, the mother observed what she thought to be a "wet spot near his privates on his pants."
It is well settled that, at a SORA hearing, the People have "the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n [3]). The clear and convincing standard requires evidence that "makes it highly probable that the alleged activity actually occurred" (People v Warrior, 57 AD3d 1471, 1472 [4th Dept 2008] [internal quotation marks omitted]; see People v Stewart, 61 AD3d 1059, 1060 [3d Dept 2009]). In our view, the evidence submitted to the SORA court does not establish a high probability that sexual contact actually occurred.
" 'Sexual contact' means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing, as well as the emission of ejaculate by the actor upon any part of the victim, clothed or unclothed" (Penal Law § 130.00 [3]). Here, unlike many other cases involving victims who sat on the respective defendants' laps, there is no evidence that defendant otherwise touched the victim inappropriately during that incident (see People v Scerbo, 59 AD3d 1066, 1067-1068 [4th Dept 2009], lv denied 12 NY3d 821 [2009]; cf. People v Scerbo, 74 AD3d 1730, 1733-1734 [4th Dept 2010], lv denied 15 NY3d 757 [2010]; People v Hicks, 55 AD3d 1138, 1140 [3d Dept 2008], lv denied 12 NY3d 758 [2009]). Although it appears that something nefarious might have happened while the victim was sitting on defendant's lap, causing a wet spot, the presence of what appeared to be a wet spot on defendant's pants does not, without more, rise to the level of clear and convincing evidence of sexual contact. As a result, we remove those points from defendant's risk assessment score, resulting in a total score of 90 points. That score makes defendant a presumptive level two risk.
Defendant further contends that he should be granted a downward departure to level one. Inasmuch as he contended, at the hearing, that he should be granted such a downward departure to level one in the event he was scored a level two risk, we conclude that the issue is preserved for our review. We conclude, however, that "the mere fact that the . . . [c]ourt granted his application for a downward departure from a presumptive risk level three to a risk level two does not require this Court to grant him a downward departure from a presumptive risk level two to a risk level one" (People v Williams, 186 AD3d 883, 884 [2d Dept 2020], lv denied 36 NY3d 903 [2020]). Although we could remit the matter for a new hearing regarding the application for a downward departure from a presumptive level two risk (see People v Filkins, 107 AD3d 1069, 1070-1071 [3d Dept 2013]; People v Cruz, 28 AD3d 819, 820 [3d Dept 2006]), where, as here, "the record is sufficient for this Court to make its own findings of fact and conclusions of law, this Court may decide a defendant's application for a downward departure instead of remitting the matter" (Williams, 186 AD3d at 884).
We agree with defendant and the court that the letter from defendant's counselor and the risk assessment instrument evaluations scoring him to be the lowest possible risk of reoffending constituted mitigating circumstances that, as a matter of law, were of a kind or degree that were not adequately taken into account by the Guidelines (see People v Gillotti, 23 NY3d 841, 861 [2014]). We also agree with defendant that he met his initial burden of establishing the existence of those mitigating factors by a preponderance of the evidence (see id. at 864). Thus, it is up to the court to "exercise its discretion by weighing the mitigating factor[s] to determine whether the totality of the circumstances warrants a departure to avoid an over-assessment of the defendant's dangerousness and risk of sexual recidivism" (People v McKinney, 173 AD3d 1074, 1075 [2d [*2]Dept 2019], lv denied 34 NY3d 906 [2019]). Here, under the totality of the circumstances, we conclude that defendant's proffered mitigating factors are not sufficient "to warrant a downward departure from a presumptive risk level two to risk level one" (Williams, 186 AD3d at 885). Before our determination to reduce his risk assessment score to 90 points, defendant's score placed him at the very bottom end of level three, and the mitigating evidence established that he was over-assessed at that highest risk level. We cannot say the same when considering the mitigating evidence in relation to a presumptive risk level of two. With a score of 90 points, defendant is in the middle of the range for risk level two, and his history does not warrant a reduction to the lowest possible risk level (cf. People v Stevens, 55 AD3d 892, 893-894 [2d Dept 2008]; see generally People v Lewis, 156 AD3d 1431, 1432 [4th Dept 2017], lv denied 31 NY3d 904 [2018]).
Entered: April 30, 2021
Mark W. Bennett
Clerk of the Court