McCarthy, J.
Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered June 27, 2013, upon a verdict convicting defendant of the crimes of assault in the second degree and criminal possession of a weapon in the fourth degree.
Joseph Fritz picked up defendant’s girlfriend and brought her to a concert at the Northern Lights music hall in the Town of Clifton Park, Saratoga County. Later that evening, defendant arrived there to meet up with his girlfriend. A few hours later, Fritz and defendant had an altercation in the parking lot, during which defendant’s pocket knife caused a large laceration across Fritz’s abdomen.
*1045 Following a trial, the jury acquitted defendant of assault in the first degree but convicted him of assault in the second degree and criminal possession of a weapon in the fourth degree. County Court denied defendant’s request to redact portions of the presentence investigation report (hereinafter PSI). The court sentenced him to seven years in prison followed by three years of postrelease supervision for the assault conviction and a concurrent one-year term of incarceration for the weapon possession conviction. Defendant appeals.*
The assault conviction is supported by legally sufficient evidence and is not against the weight of the evidence. To establish assault in the second degree, the People had to prove that defendant, “[w]ith intent to cause physical injury to another person, . . . cause[d] such injury to such person ... by means of ... a dangerous instrument” (Penal Law § 120.05 [2]). “Intent to cause injury can be inferred from the circumstances” of an altercation, including the injuries inflicted (People v Newland, 83 AD3d 1202, 1204 [2011], lv denied 17 NY3d 798 [2011]; see People v Gonzalez, 64 AD3d 1038, 1041 [2009], lv denied 13 NY3d 796 [2009]; People v Zindle, 48 AD3d 971, 973 [2008], lv denied 10 NY3d 846 [2008]). A dangerous instrument is defined as “any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury” (Penal Law § 10.00 [13]; see People v Carter, 53 NY2d 113, 116 [1981]). Viewing the evidence in the light most favorable to the People, as we must when considering the legal sufficiency of the evidence (see People v Ramos, 19 NY3d 133, 136 [2012]), defendant used his pocket knife to eviscerate Fritz, causing an approximately 16-inch-wide cut to his abdomen through which his internal organs spilled out. Based on this use, the pocket knife was a dangerous instrument. A cabdriver who witnessed the incident testified that defendant shoved Fritz hard, knocking him down, then crouched, stood up and ran away. Fritz did not have a weapon. Considering this testimony, along with proof regarding the injury that was inflicted and that Fritz and defendant had verbally argued, the evidence was legally sufficient to prove assault in the second degree (see People v Zindle, 48 AD3d at 973; People v Lewis, 46 AD3d 943, 945 [2007]).
As to the weight of the evidence, the witnesses presented several versions of the altercation. Fritz testified that defendant appeared irritated all night but would not say why. When Fritz followed defendant’s girlfriend to the parking lot, defendant fol *1046 lowed him, they argued and, while the two men stood face to face, Fritz felt an impact in his abdomen and later noticed that he was bleeding and eviscerated. Witnesses, including a physician, testified that amnesia sometimes accompanies traumatic injuries, explaining why Fritz could not recall some details of the incident. Defendant’s girlfriend saw Fritz repeatedly jabbing defendant in the shoulder inside the bar. She left to get away from Fritz. She did not see the argument and was somewhat detached from her surroundings, due to either intoxication or a medical condition, but heard defendant shout, “Yo, get off me,” followed by Fritz shouting that defendant didn’t get it and “she’s done with you.” The cabdriver testified that Fritz and defendant’s girlfriend were having a heated conversation in the parking lot. After that, the cabdriver saw defendant run toward them, argue with Fritz and push Fritz to the ground, then crouch down for IV2 to 2 minutes before leaving the area.
Defendant testified that Fritz had repeatedly touched him inside the bar, despite defendant asking him not to. Fritz glared at defendant, yelled at him, put his fingers in defendant’s face and threatened to beat up both defendant and his brother. Defendant walked away. Outside, defendant started to approach his girlfriend, but then decided to give her some space. When he saw Fritz approaching her, he headed toward them. Fritz shouted at defendant, calling him names and telling defendant that his relationship with his girlfriend was done. Defendant testified that Fritz shoved him and asked if he wanted to fight. After defendant told Fritz to back off, defendant walked away, but Fritz jumped on defendant’s back and knocked him to the ground. Defendant testified that he was terrified because his shoulder regularly dislocated, causing intense pain and rendering the arm unusable, and he was afraid that he would be unable to defend himself and could be permanently injured. To protect himself, he pushed Fritz off his back with his left arm, opened his pocket knife with his right hand and spun around to show Fritz the knife. At the same time, Fritz lunged at defendant. Defendant did not realize that the knife made contact and, as soon as Fritz backed away, defendant left the scene. When he heard sirens, he panicked and threw his knife in the woods. Defendant testified that he did not stab or thrust the knife, but only meant to scare Fritz away.
Although defendant’s statements about being pushed down by Fritz are supported by grass and mud stains on his pants and shoes, and scrapes on his wrist and knee, those markings also could have occurred if he knelt down to stab Fritz, which would be consistent with the cabdriver’s testimony. Defendant *1047 acknowledged that he did not see Fritz with a weapon and Fritz never threatened to use a weapon. Fritz was 12 years older, six inches shorter and 40 pounds lighter than defendant. While it would not have been unreasonable for the jury to believe defendant’s claim of self-defense, it was also reasonable for the jury to disbelieve defendant’s testimony, perhaps finding it unlikely that Fritz would have received a 16-inch-wide laceration across his abdomen by impaling himself on defendant’s knife if defendant just held the weapon and did not thrust or slice at Fritz with it. According deference to the jury’s exercise of its right to credit certain testimony over other testimony, the assault conviction is not against the weight of the evidence (see People v Newland, 83 AD3d at 1204; People v Zindle, 48 AD3d at 973).
The conviction for criminal possession of a weapon in the fourth degree is based on legally sufficient evidence and is not against the weight of the evidence. As charged to the jury, that count required proof that defendant knowingly possessed a dangerous knife with intent to use it unlawfully against another person (see Penal Law § 265.01 [2]). A “defendant’s mere possession of [a pocketknife], while displaying it in an effort to instill fear, [is] itself presumptive evidence of his [or her] intent to use it unlawfully” (People v Jackson, 38 AD3d 1052, 1054 [2007], lv denied 8 NY3d 986 [2007]; see Penal Law § 265.15 [4]). Defendant testified that Fritz neither visibly possessed a weapon nor threatened him with a weapon, yet defendant pulled out his knife and opened it to frighten Fritz. Based on these circumstances, the jury could reasonably determine that defendant possessed the knife during the altercation with the intent to use it unlawfully against Fritz (see People v Brown, 100 AD3d 1035, 1036-1037 [2012], lv denied 20 NY3d 1009 [2013]; People v Jackson, 38 AD3d at 1054).
County Court properly denied defendant’s request to provide the jury with a charge of justification by means of ordinary physical force. The court did charge the jury regarding self-defense by means of deadly physical force. Although a court may give both charges if the evidence, viewed in a light most favorable to the defendant, supports them (see People v Powell, 101 AD3d 1369, 1371-1372 [2012], lv denied 21 NY3d 1019 [2013]; People v Ogodor, 207 AD2d 461, 462 [1994]), the charge should be limited to justification based on deadly physical force “if it may be held, as a matter of law, that the physical force used by the defendant was, in fact, ‘deadly,’ that is, ‘readily capable of causing death or other serious physical injury’ ” (People v Jones, 148 AD2d 547, 549 [1989], quoting Penal Law § 10.00 *1048 [11]; see People v Mothon, 284 AD2d 568, 569 [2001], lv denied 96 NY2d 865 [2001]; People v Ogodor, 207 AD2d at 462). The court did not err in determining that defendant causing his knife to come into contact with Fritz’s abdomen constituted deadly physical force as a matter of law (see People v Jones, 24 AD3d 815, 816 [2005], lv denied 6 NY3d 777 [2006]; People v Mothon, 284 AD2d at 569; compare People v Powell, 101 AD3d at 1372; People v Ogodor, 207 AD2d at 462).
County Court did not abuse its discretion in denying defendant’s request for an expert witness, as the court found that the subject matter was within the knowledge of typical jurors, who could use their own experience, observations and common sense to deduce whether defendant acted in self-defense (see People v Cronin, 60 NY2d 430, 433 [1983]; cf. People v De Sarno, 121 AD2d 651, 654 [1986], lv denied 68 NY2d 769 [1986]). Further, inasmuch as the scope and extent of cross-examination is within the trial court’s discretion, we do not find that County Court abused its discretion in limiting defendant’s cross-examination of Fritz, after Fritz had acknowledged his prior convictions, by precluding questions concerning the underlying facts relating to one of those prior crimes (see People v Mothon, 284 AD2d at 570).
While erroneous information should be redacted from a PSI (see People v Freeman, 67 AD3d 1202, 1202 [2009]), County Court did not err in denying redaction and instead ordering that the sentencing minutes accompany the PSI. The allegedly erroneous portions generally constituted facts that were disputed at trial—such as the part of the PSI that addressed the victim’s statement and indicated that it was Fritz’s version of events—rather than concrete and indisputable facts. Accordingly, the court did not abuse its discretion in refusing to redact portions of the PSI, but adequately addressed the problem by appending the sentencing minutes so that anyone reviewing the PSI in the future would also see defendant’s arguments regarding the opinions and facts that he challenged (see People v Thomas, 2 AD3d 982, 984 [2003], lv denied 1 NY3d 602 [2004]). Under the circumstances, including the injury that defendant inflicted upon Fritz, the sentence was not harsh or excessive.
Peters, PJ., Lahtinen, Garry and Devine, JJ., concur.
Ordered that the judgment is affirmed, and matter remitted to the County Court of Saratoga County for further proceedings pursuant to CPL 460.50 (5).

 This Court granted defendant’s application for bail pending appeal.