People v Persen (2020 NY Slip Op 04204)





People v Persen


2020 NY Slip Op 04204


Decided on July 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 23, 2020

109845

[*1]The People of the State of New York, Respondent,
v
Cecilio Persen, Appellant.

Calendar Date: May 22, 2020

Before: Garry, P.J., Lynch, Clark, Devine and Reynolds Fitzgerald, JJ.


Rural Law Center of New York, Castleton (Keith F. Schockmel of counsel), for appellant.
Chad W. Brown, District Attorney, Johnstown (Amanda M. Nellis of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Fulton County (Sira, J.), rendered August 28, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the third degree and menacing in the second degree.
On October 4, 2016, defendant and his son were involved in an altercation with another individual (hereinafter the victim) outside of a police station in the City of Gloversville, Fulton County, during which the victim stabbed defendant's 17-year-old son. Police responded to the incident and, following an exchange between defendant and one of the responding officers, defendant was arrested for disorderly conduct. During a search incident to that arrest, a folding knife was discovered in defendant's front sweatshirt pocket, and defendant thereafter made incriminating statements regarding his possession of the knife. In February 2017, defendant was convicted, upon his plea of guilty, of disorderly conduct (see Penal Law § 240.20 [2]).
Meanwhile, in January 2017, defendant was indicted on charges of criminal possession of a weapon in the third degree, menacing in the second degree and harassment in the second degree, all of which were based on his involvement in the October 2016 incident. Defendant moved to suppress the folding knife discovered during the search incident to his arrest for disorderly conduct, as well as the statements he made to police. County Court denied the motion and the matter thereafter proceeded to a jury trial. Following jury selection, but prior to opening statements, County Court granted the People's motion to dismiss the charge of harassment in the second degree. Defendant was ultimately found guilty of criminal possession of a weapon in the third degree and menacing in the second degree. After unsuccessfully moving to set aside the verdict pursuant to CPL 330.30 (1), defendant was sentenced to 1½ to 4½ years in prison for his conviction of criminal possession of a weapon in the third degree and to a concurrent one-year jail term for his conviction of menacing in the second degree. Defendant appeals.
Defendant argues that the jury's verdict was not based upon legally sufficient evidence and that it was also against the weight of the evidence. However, defendant failed to preserve his legal sufficiency challenge, inasmuch as he did not renew his motion for a trial order of dismissal after the presentation of his case (see People v Stone, 179 AD3d 1287, 1288 [2020]; People v Hilton, 166 AD3d 1316, 1317 [2018], lv denied 32 NY3d 1205 [2019]). Nevertheless, as part of our weight of the evidence review, we necessarily determine whether the People proved each element of the charged crimes beyond a reasonable doubt (see People v McCoy, 169 AD3d 1260, 1261 [2019], lv denied 33 NY3d 1033 [2019]; People v Hernandez, 165 AD3d 1473, 1473 [2018]). Additionally, where, as here, it would not have been unreasonable for the jury to have reached a different verdict, we must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Hernandez, 180 AD3d 1234, 1235 [2020], lv denied 35 NY3d 993 [2020]).
As relevant here, a person is guilty of criminal possession of a weapon in the third degree (a class D felony offense) when he or she commits the offense of criminal possession of a weapon in the fourth degree (a class A misdemeanor), and he or she has been previously convicted of any crime (see Penal Law §§ 265.01 [2]; 265.02 [1]; People v Ford, 66 NY2d 428, 440 [1985]). A person is guilty of criminal possession of a weapon in the fourth degree when he or she knowingly "possesses any . . . dangerous knife . . . with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]). A knife may be considered a "dangerous knife," as that term is used in Penal Law § 265.01 (2), "when the circumstances of its possession, including the behavior of its possessor, demonstrate that the possessor . . . considered it a weapon" (People v Jackson, 38 AD3d 1052, 1054 [2007] [internal quotation marks and citation omitted], lv denied 8 NY3d 986 [2007]; accord People v Pine, 126 AD3d 1112, 1116 [2015], lv denied 27 NY3d 1004 [2016]; see Matter of Jamie D., 59 NY2d 589, 591 [1983]). The mere possession of a knife, while displayed in a manner to instill fear, is presumptive evidence of an intent to use the knife unlawfully (see People v Pine, 126 AD3d at 1116; People v Taylor, 118 AD3d 1044, 1047 [2014], lv denied 23 NY3d 1043 [2014]; People v Jackson, 38 AD3d at 1054).
Additionally, a person is guilty of menacing in the second degree, a class A misdemeanor, when "[h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a . . . dangerous instrument" (Penal Law § 120.14 [1]), and when, as charged here, he or she was not justified in doing so (see People v Padgett, 60 NY2d 142, 144-145 [1983]; People v Ellis, 233 AD2d 692, 693 [1996]). A dangerous instrument is "any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]). Finally, a person is justified in "us[ing] physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person," provided that, as relevant here, he or she was not the initial aggressor and did not provoke the conduct with intent to cause physical injury to another person (Penal Law § 35.15 [1]).
The evidence established that defendant was driving a vehicle in which his wife and son were passengers when they encountered a vehicle occupied by the victim and his mother. Although there were conflicting accounts as to the events that followed, including the actions of the individuals in the vehicles and who was following who, the evidence demonstrated that the victim called 911 to report the encounter and that the victim and his mother followed the advice of the 911 dispatcher to drive to a nearby police station. The testimony established that defendant was driving past the police station as the victim and his mother were walking toward the station's entrance and that defendant's son jumped out of the car and initiated a physical altercation with the victim. The victim and his mother, as well as certain eyewitnesses on the scene, testified that defendant took part in the physical assault on the victim, while defendant's wife and son testified that he did not. As established by the testimony, the victim pulled a knife out of his pocket during the altercation and ultimately stabbed defendant's son in the upper back. The son was ultimately airlifted to a hospital, where he was treated for a punctured lung.
Numerous witnesses — namely, the victim, the victim's mother, defendant's son, defendant's wife and several eyewitnesses at the scene — testified that defendant pulled out a knife immediately after the stabbing and chased the victim with it. The victim testified that, as defendant was chasing him, defendant was threatening to kill him, and that defendant threw the knife at him, hitting him in the back. One of the eyewitnesses testified that she did not observe defendant with a knife in real time, but that she later reviewed a picture she had taken of the incident, which was admitted into evidence, and saw what appeared to be an "apparatus in his hand." Defendant's wife and son each testified that defendant's demeanor changed when he saw his son bleeding and struggling to breathe and that he used the knife to try to get the victim away from them.
The People also presented evidence of inculpatory statements made by defendant after the incident. Specifically, a detective sergeant testified that he interviewed defendant after the fact and that defendant admitted to possessing a knife, pulling out that knife and chasing the victim with it. Consistent with the audio/video recording of defendant's police interview, which was admitted into evidence, the detective sergeant testified to defendant's statement that "it wouldn't have been good" if he caught the victim and "remarks . . . that he would have stabbed" the victim. Defendant made similar admissions in his written statement to police, which was in question-and-answer form. The folding knife discovered on defendant's person during the search incident to his arrest was admitted into evidence.[FN1]
Defendant presented a justification defense at trial, arguing that he acted in defense of himself, his son and his wife. As part of that defense, defendant presented testimony from his coworker to establish that he possessed the folding knife for a lawful purpose. Defendant's coworker testified that he and defendant worked for a roofing contractor, that folding knives were commonly used by roofers to cut shingles and that he had given defendant the folding knife for that purpose on the morning of the incident. There was certainly evidence to support the conclusion that, after witnessing the stabbing of his son, defendant acted in defense of himself, his son and his wife. However, the jury did not credit defendant's justification defense, choosing to instead credit proof that defendant harbored an unlawful intent when chasing the victim with the knife (see Penal Law § 35.15 [1]; People v Soriano, 121 AD3d 1419, 1421 [2014]; People v Bailey, 111 AD3d 1310, 1311-1312 [2013], lv denied 23 NY3d 1018 [2014]). Considering the evidence in a neutral light and according deference to the jury's credibility determinations (see People v Conway, 179 AD3d 1218, 1218 [2020], lv denied 35 NY3d 941 [2020]), we find that the weight of the evidence supports the jury's determination that defendant knowingly possessed a dangerous knife with intent to use it unlawfully against the victim and that he intentionally placed or attempted to place the victim in reasonable fear of physical injury, serious physical injury or death by displaying a dangerous instrument (see Penal Law §§ 120.14 [1]; 265.01 [2]; People v Hargett, 11 AD3d 812, 814 [2004], lv denied 4 NY3d 744 [2004]).[FN2] Accordingly, we reject defendant's contention that the verdict was against the weight of the evidence.
Defendant also challenges County Court's denial of his motion to suppress the knife as the product of a search incident to an unlawful arrest. "[A] police officer may arrest a person for . . . any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence" (CPL 140.10 [1] [a]). As relevant here, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," he or she "engages in fighting or in violent, tumultuous or threatening behavior," "makes unreasonable noise" or "uses abusive or obscene language, or makes an obscene gesture" in a public place (Penal Law § 240.20 [1], [2], [3]). To support a charge of disorderly conduct, the defendant's statements and/or conduct must be "of a public rather than an individual dimension," a requirement that is reflective of "the mens rea component, which requires proof of an intent to threaten public safety, peace or order (or the reckless creation of such a risk)" (People v Baker, 20 NY3d 354, 359 [2013]). In other words, "a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem" (People v Weaver, 16 NY3d 123, 128 [2011] [internal quotation marks and citation omitted]; accord People v Baker, 20 NY3d at 359-360). In determining whether the record supports an inference that the defendant had the requisite mens rea, courts may consider, among other factors, "the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances" (People v Weaver, 16 NY3d at 128; accord People v Baker, 20 NY3d at 360).
At the suppression hearing, the arresting officer testified that he heard defendant yelling and swearing when he exited the police station, that he approached defendant and that he advised him to calm down. The officer stated that he and defendant "had a short exchange," during which he "reached out [and] stopped" defendant from walking toward his son, who was being treated by emergency responders. According to the officer, he "warned [defendant] about his language and yelling" and implored him to "just let EMS tend to his son[, as f]urther distraction would just make matters worse." The officer testified that defendant then started walking toward his own car, but turned around, walked past him and, after being directed to stop, "took three more steps." The officer asserted that defendant then "turned around, clenched his fist, took a few steps towards me and told me . . . he was going to see his son." The officer stated that, at that point, he grabbed defendant and, "[d]ue to his aggressive nature[,] . . . escorted him to the ground" and placed him under arrest for disorderly conduct.
In our view, the evidence presented by the People at the suppression hearing fell far short of establishing that the arresting officer had reasonable cause to believe that defendant intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof (see People v Baker, 20 NY3d at 363-364; compare People v Lepard, 83 AD3d 1214, 1215-1216 [2011], lv denied 18 NY3d 925 [2012]). The testimony demonstrated that defendant was visibly upset following the stabbing of his son, was intent on being with his son and directed the allegedly disruptive statements and conduct primarily at the arresting officer, "a party trained to defuse situations involving angry or emotionally distraught persons" (People v Baker, 20 NY3d at 363). There was no evidence that the situation extended beyond a tense exchange between defendant and the arresting officer (see People v Gonzalez, 25 NY3d 1100, 1101 [2015]). Nor was there any proof regarding the number of people in the vicinity or whether any were drawn to the situation between defendant and the officer. As proof of the public harm element was lacking, we find that defendant's arrest for disorderly conduct was invalid and that County Court therefore should have granted defendant's motion to suppress the folding knife found on defendant's person during the search incident to that arrest (see People v Gonzalez, 25 NY3d at 1101-1102; People v Johnson, 22 NY3d 1162, 1164 [2014]; People v Baker, 20 NY3d at 363-364).
We also find that defendant received ineffective assistance of counsel at the suppression hearing and that such ineffective assistance of counsel contributed to County Court's failure to suppress the knife. Although defense counsel moved, on defendant's behalf, to suppress the knife and defendant's inculpatory statements, he asked a total of four questions at the suppression hearing, waived closing argument and declined County Court's offer to accept a posthearing memorandum on the issues. In addition, the only argument that defense counsel made in support of defendant's motion to suppress the knife was included in the motion papers and such argument was premised upon factually inaccurate information. Furthermore, defendant did not seek to suppress defendant's inculpatory statements as the product of an illegal arrest (see generally People v Martinez, 37 NY2d 662, 673-674 [1975]; People v Palmer, 161 AD3d 1291, 1293 [2018], lvs denied 31 NY3d 1148, 1151, 1153 [2018]).
Notwithstanding County Court's failure to suppress the folding knife and the less than meaningful representation rendered by defense counsel at the suppression hearing, given the overwhelming proof of defendant's guilt, a new trial is warranted only if we can conclude that there is a reasonable possibility that the constitutional error might have contributed to defendant's convictions (see People v Mairena, 34 NY3d 473, 484-485 [2019]; People v Crimmins, 36 NY2d 230, 237 [1975]). We cannot reach such a conclusion here, as the People presented extensive trial evidence establishing, beyond a reasonable doubt, that defendant possessed the folding knife during the incident in question. Such evidence was comprised of testimony from six eyewitnesses — including defendant's wife and his son — who placed the knife in defendant's hand, defendant's own inculpatory statements admitting that he possessed the knife and a photographic image depicting an object in defendant's hand. Given the uncontroverted and extensive evidence of defendant's possession of the folding knife, we cannot conclude that there is any reasonable possibility that the erroneous admission of the physical knife itself might have contributed to defendant's convictions (see People v Etoll, 51 NY2d 840, 841 [1980]; People v Baptiste, 306 AD2d 562, 567-568 [2003], lv denied 1 NY3d 594 [2004]). As such, we find that County Court's error in denying defendant's motion to suppress the knife is harmless beyond a reasonable doubt (see People v Mairena, 34 NY3d at 486; People v Etoll, 51 NY2d at 841; People v Crimmins, 36 NY2d at 237).
Defendant further challenges County Court's Sandoval ruling, which would have permitted the People to cross-examine defendant, had he testified, about the existence of misdemeanor convictions in 2014 for criminal trespass in the second degree and criminal mischief in the fourth degree, as well as a disorderly conduct violation in 2014, but not about the nature of the crimes or the underlying facts. Defendant, however, failed to object to County Court's compromise ruling and, thus, his challenge is unpreserved for our review (see People v Jackson, 29 NY3d 18, 22 [2017]; People v Delbrey, 179 AD3d 1292, 1295 [2020], lv denied 35 NY3d 969 [2020]).
Lastly, we turn to defendant's challenge to the sentence imposed upon him. The presentence investigation report recommended a term of incarceration at the local level, which was premised upon consideration of the circumstances of the crimes, various mitigating factors and the length of time that defendant had been incarcerated. The mitigating circumstances referenced in the presentence investigation report included, among others, defendant's minimal criminal history, his status as the victim of a crime that caused him serious physical injury in 2005, certain mental health issues, his steady employment history and his close familial relationships. Specifically, defendant's minimal criminal history consisted of two prior misdemeanor convictions and a violation conviction, all from 2014.[FN3] County Court acknowledged the favorable presentence investigation report and recommendation, as well as many of the mitigating factors referenced therein. Nevertheless, County Court sentenced defendant to an aggregate prison term of 1½ to 4½ years in state prison. Considering all of the foregoing, including the circumstances underlying defendant's criminal behavior, we find such sentence to be harsh and excessive. Consequently, we exercise our discretion to reduce the sentence imposed upon defendant for criminal possession of a weapon in the third degree to time served (see generally People v Masucci, 266 AD2d 579, 580-581 [1999], lv denied 95 NY2d 836 [2000]).
Defendant's remaining contentions have either been rendered academic by our determination or are without merit.
Garry, P.J., Lynch, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed to time served, and, as so modified, affirmed.



Footnotes

Footnote 1: Although we find, for reasons discussed below, that the knife should have been suppressed, "we must review the verdict in light of the evidence received" at trial (People v Wright, 81 AD3d 1161, 1163 [2011], lv denied 17 NY3d 803 [2011]).

Footnote 2: Defendant was arraigned, outside the presence of the jury, on a special information alleging that he previously had been convicted of criminal mischief in the fourth degree. Defendant admitted that prior misdemeanor conviction (see CPL 200.60 [3] [a]), thereby elevating the offense of criminal possession of a weapon in the fourth degree, a class A misdemeanor, to criminal possession of a weapon in the third degree, a class D felony (see Penal Law § 265.02 [1]).

Footnote 3: We note that defendant's instant felony conviction for criminal possession of a weapon in the third degree arose of out misdemeanor conduct that was precipitated by the victim stabbing defendant's 17-year-old son and was elevated to a class D felony offense solely by virtue of his prior misdemeanor conviction of criminal mischief in the fourth degree (see Penal Law § 265.02 [1]).