People v Green (2021 NY Slip Op 00207)





People v Green


2021 NY Slip Op 00207


Decided on January 14, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 14, 2021

109897 112012

[*1]The People of the State of New York, Respondent,
v
Nagee Green, Appellant.

Calendar Date: November 17, 2020

Before: Egan Jr., J.P., Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Paul J. Connolly, Delmar, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeals (1) from a judgment of the County Court of Tompkins County (Rowley, J.), rendered November 6, 2017, upon verdicts convicting defendant of the crimes of assault in the second degree and murder in the second degree, and (2) by permission, from an order of said court, entered January 14, 2020, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In the early morning hours of August 28, 2016, a brawl erupted on the streets of the City of Ithaca, Tompkins County. Rahiem Williams and Anthony Nazaire were stabbed by a knife-wielding combatant during the fighting, and Nazaire succumbed to his injuries. An investigation pointed to defendant as the perpetrator, and he was charged in an indictment with various offenses. Defendant unsuccessfully moved to suppress statements he had made during a recorded interview with investigators, after which the matter proceeded to trial. The jury was unable to reach a verdict on the counts relating to the stabbing of Nazaire, prompting County Court to declare a mistrial on those counts and accept a partial verdict finding defendant guilty of assault in the second degree relating to the stabbing of Williams. The second trial on the counts relating to Nazaire ended with the jury finding defendant guilty of murder in the second degree. County Court sentenced defendant to 17 years to life in prison on the murder conviction and to a consecutive prison term of three years, followed by three years of postrelease supervision, on the assault conviction. Defendant thereafter moved to vacate the judgment of conviction on the ground of ineffective assistance of counsel. County Court denied that motion. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
We affirm. The proof at the first trial reflected that the melee arose from a run-in between Williams and Nazaire, who knew each other and were walking together, and another group. The dispute drew in acquaintances of both groups who were in the area, and mayhem ensued when Williams was punched. Defendant knew the group that was arguing with Williams and Nazaire, and he was identified as an active participant in the brawl who had been staring Williams down before it began. The trial testimony and social media videos of the brawl reflected that defendant was screaming, "I kill out here" during the fighting, swung a knife at another combatant, then ran toward Williams and Nazaire. Williams testified that defendant had an encounter with Nazaire and then approached him, at which point Williams grabbed defendant by his backpack and they both fell to the ground. Lying on his right side underneath defendant, Williams tried to shoulder defendant off of him and called out to Nazaire for assistance. Nazaire came over, punched defendant twice in the shoulder or back, then collapsed and began bleeding out of his mouth as the result of a stab wound [*2]to his chest, prompting Williams to cry for help as defendant got up and left the scene. Williams realized later that he had also been stabbed multiple times in the back, apparently with a knife recovered nearby that had Williams' DNA on the blade and that one witness stated appeared to be the one held by defendant earlier. Defendant further made statements to investigators in which he acknowledged that both Williams and Nazaire were stabbed, perhaps unintentionally, as he tried to get away from them.
Viewing the foregoing proof in the light most favorable to the People, as is required in assessing the legal sufficiency of the evidence (see People v Lendof-Gonzalez, NY3d , , 2020 NY Slip Op 06940, *2 [2020]), defendant brandished a knife in the melee with the stated intent to "kill," charged at Nazaire and then Williams, and stabbed Williams while they struggled on the ground. The intent of a defendant "may be inferred from the totality of the circumstances presented and the natural and probable consequences of his or her actions" and, contrary to defendant's contention, this proof was legally sufficient for the jury to find that he intentionally injured Williams by repeatedly stabbing him with the knife (People v Stover, 174 AD3d 1150, 1151 [2019], lv denied 34 NY3d 954 [2019]; see Penal Law § 120.05 [2]; People v Soriano, 121 AD3d 1419, 1420-1421 [2014]; People v Taylor, 118 AD3d 1044, 1045 [2014], lv denied 23 NY3d 1043 [2014]). Further, we defer to the jury's determination to credit that proof over defendant's suggestion that he merely held the knife while Williams repeatedly impaled himself upon it during their struggle, and our independent review leaves us satisfied that the assault conviction was not against the weight of the evidence (see People v Townsend, 144 AD3d 1196, 1196-1197 [2016], lv denied 28 NY3d 1189 [2017]; People v Gibson, 141 AD3d 1009, 1012 [2016]; People v Taylor, 118 AD3d at 1046-1047).
Next, we reject defendant's argument that the second trial was barred by double jeopardy. Although double jeopardy can come into play where a mistrial is granted over a defendant's objection, there is no such difficulty if "the defendant requests or consents to" one (People v Ellis, 182 AD3d 791, 792 [2020], lv denied 35 NY3d 1026 [2020]; see Matter of Suarez v Byrne, 10 NY3d 523, 532-534 [2008]; People v Ferguson, 67 NY2d 383, 388 [1986]). Defendant implicitly gave that consent after County Court proposed that it take a partial verdict and schedule a retrial on the counts relating to Nazaire for which the jury was unable to agree (see CPL 310.70 [1] [a]; [2]), at which point defense counsel agreed to a partial verdict and offered no objection to the plan for a retrial (see Matter of Gentil v Margulis, 26 NY3d 1027, 1028 [2015]; Matter of Marte v Berkman, 16 NY3d 874, 875-876 [2011]; People v Haggray, 164 AD3d 1522, 1523 [2018], lv denied 32 NY3d 1111 [2018]; Matter of Matthews v Nicandri, 252 AD2d 657, 658 [1998], appeal [*3]dismissed 92 NY2d 945 [1998]). The fact that defense counsel gave that consent immediately after County Court denied his request for a jury charge that would have limited the factual scenarios under which the jury could find defendant guilty on the remaining counts did not, contrary to defendant's contention, call the voluntariness of the consent into question. Even assuming that County Court erred in declining to give the charge, such was simply one factor for defense counsel to consider in assessing how the defense had fared at the trial and whether a retrial would be in defendant's best interests (see United States v Dinitz, 424 US 600, 608 [1976]; People v Ferguson, 67 NY2d at 389-390). Defendant accordingly waived any objection to the second trial on double jeopardy grounds, and we need not consider whether there would have been "'manifest necessity' for the mistrial" absent that waiver (People v Ferguson, 67 NY2d at 388, quoting United States v Perez, 22 US 579, 580 [1824]).
We therefore turn to the second trial and the evidence presented at it.[FN1] At the outset, the People were properly permitted to present evidence that conformed to an amended summary of facts, functioning as their bill of particulars, in which they altered the sequence in which defendant allegedly stabbed Williams and Nazaire but "did not change or limit the [underlying] theory of prosecution" that defendant had intentionally stabbed both in a rapid sequence during the brawl (People v Medina, 233 AD2d 927, 927 [1996], lv denied 89 NY2d 926 [1996]; see CPL 200.95 [8]; People v Moore, 274 AD2d 959, 959 [2000], lv denied 95 NY2d 868 [2000]).[FN2] The evidence at the second trial was essentially identical to that presented at the first, but it is worth repeating that defendant threatened one man with a knife while warning, "I kill out here," charged toward Nazaire, then Williams, and told investigators that both were stabbed in the scuffle. The later autopsy on Nazaire's body revealed that the knife had been plunged into his chest with sufficient force to penetrate cartilage and sever his subclavian vein and windpipe. The pathologist who performed that autopsy testified that Nazaire would have collapsed from massive internal bleeding about a minute after the wound was inflicted, and Nazaire did collapse shortly after his initial encounter with defendant, remaining upright just long enough to assist Williams as Williams struggled with, and was stabbed by, defendant on the ground.
When viewed in the light most favorable to the People, the knife-wielding defendant's threats to "kill" before running towards Nazaire and Williams, his admissions to investigators, his repeated stabbing of Williams after encountering Nazaire, the severity of Nazaire's injuries and the force required to cause them, and the timing of Nazaire's collapse constituted legally sufficient evidence from which the jury could find that defendant intentionally stabbed Nazaire in the chest with the aim of killing [*4]him (see Penal Law § 125.25 [1]; People v Murphy, 128 AD2d 177, 181-182 [1987], affd for reasons stated below 70 NY2d 969 [1988]; People v Haire, 96 AD2d 1110, 1111 [1983]). As for the weight of the evidence, a different verdict would not have been unreasonable given the lack of any eyewitness account or video recording of the stabbing, the questions as to how reliable defendant's statements to investigators were, and the lack of DNA testing that tied defendant or Nazaire to the knife recovered at the scene. Video evidence and Williams' testimony confirmed, however, that an armed defendant ran toward Nazaire. Further, the individual who tested samples taken from the recovered knife testified that the handle had a mixture of DNA profiles that could not be tied to any one person and that any genetic material from Nazaire on the blade could have been "masked" by that of Williams when the knife was used to stab him. The jury credited the proof that defendant fatally stabbed Nazaire notwithstanding those weaknesses in the People's case and, "viewing the evidence in a neutral light and deferring to the jury's resolution of issues of credibility, we find that the verdict is not against the weight of the evidence" (People v Vandenburg, AD3d , , 2020 NY Slip Op 07434, *5 [2020]; see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Watson, 174 AD3d 1138, 1140 [2019], lv denied 34 NY3d 955 [2019]).
Defendant next argues that County Court erred in refusing to suppress the statements he made to investigators in which, after he was Mirandized, the investigators allegedly coerced him into acknowledging his involvement in the stabbings by implying that there was conclusive evidence that he had stabbed Nazaire and encouraging him to come clean. This argument overlooks that "[t]he police are permitted to lie or use some deceptive methods in their questioning as long as the deception was not so fundamentally unfair as to deny due process . . . [and] was not so extensive as to induce a false confession or overcome [a] defendant's will" (People v Berumen, 46 AD3d 1019, 1020—1021 [2007] [internal quotation marks, brackets and citations omitted], lv denied 10 NY3d 808 [2008]; accord People v Henry, 173 AD3d 1470, 1478 [2019], lv denied 34 NY3d 932 [2019]). Misleading a defendant as to the strength of the evidence against him or her — including by suggesting that he or she had been filmed or seen committing the crime or had been connected to it by physical evidence — or indicating "that he or she might help himself or herself by cooperating" are not fundamentally unfair practices that would deprive a defendant of due process (People v Wolfe, 103 AD3d 1031, 1035 [2013] [internal quotation marks, brackets and citation omitted], lv denied 21 NY3d 1021 [2013]; see People v Dishaw, 30 AD3d 689, 690-691 [2006], lv denied 7 NY3d 787 [2006]; People v Dickson, 260 AD2d 931, 932 [1999], lv denied 93 NY2d 1017 [1999]; People v Hassell, 180 AD2d 819, 820 [1992], [*5]lv denied 79 NY2d 1050 [1992]). Our review of the recorded interview and the suppression hearing testimony satisfies us that the investigators did not go out of bounds in using those techniques and, accordingly, we agree with County Court "that the People satisfied their burden of demonstrating the voluntariness of defendant's statements beyond a reasonable doubt" (People v Weaver, 167 AD3d 1238, 1241 [2018], lv denied 33 NY3d 955 [2019]; see People v Thomas, 22 NY3d 629, 641 [2014]; People v Wolfe, 103 AD3d at 1035).
Defendant's other contentions upon his direct appeal do not demand extended discussion. First, County Court properly precluded testimony at the first trial from individuals who overheard a conversation in which a man worried that he had left a knife with his fingerprints on it at the scene of the brawl, which would have only been relevant to establish the truth of the out-of-court statements and was therefore inadmissible hearsay to which the state of mind exception did not apply (see People v Reynoso, 73 NY2d 816, 819 [1988]; People v Kachadourian, 184 AD3d 1021, 1023 [2020], lv denied 35 NY3d 1113 [2020]; People v Ramsaran, 154 AD3d 1051, 1053 [2017], lv denied 30 NY3d 1063 [2017]). Defendant's efforts to justify that testimony on other grounds, as well as his argument that he should have been permitted to present it at the second trial, are unpreserved and do not warrant corrective action in the interest of justice (see CPL 470.05 [2]; People v Nieves, 67 NY2d 125, 136-137 [1986]; People v Robinson, 36 NY2d 224, 228 [1975]; People v Evans, 31 AD3d 664, 664 [2006], lv denied 7 NY3d 847 [2006]). Second, County Court properly discharged a juror at the second trial as "grossly unqualified" (CPL 270.35 [1]) after it emerged that a regular spectator in the courtroom whom the juror knew was defendant's grandfather, information that caused the juror to become visibly distressed and admit that it would be "challenging" and "very difficult" for him to be fair under the circumstances (see People v Williams, 147 AD3d 983, 984 [2017], lv denied 29 NY3d 1038 [2017]; People v Guy, 93 AD3d 877, 878 [2012], lv denied 19 NY3d 961 [2012]; People v Galvin, 112 AD2d 1090, 1090-1091 [1985], lv denied 66 NY2d 919 [1985]). Defendant's remaining contentions on his direct appeal, to the extent that he continues to pursue them, have been examined and rejected.
We accordingly turn to defendant's argument, relating primarily to his CPL article 440 motion, that he received the ineffective assistance of counsel. To succeed on that claim, defendant was obliged to come forward "with proof that [the] attorney failed to provide meaningful representation and that there was no strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Wolf, 151 AD3d 1459, 1460 [2017] [internal quotation marks and citations omitted], lv denied 32 NY3d 1179 [2019]; accord People v White-Span, 182 AD3d 909, 914 [2020], lv denied 35 NY3d 1071 [*6][2020]). Defendant focused upon three purported deficiencies and, in his CPL article 440 motion papers, provided the affirmation of his lead trial counsel discussing them.
The first alleged error was the decision of trial counsel to refrain from presenting the testimony of an eyewitness who gave "uniformly non-committal and vague" answers when interviewed before the first trial and whose reluctance to testify and claimed lack of recollection, in counsel's view, raised concerns that putting him on the stand would reek of desperation and damage the defense's standing with the jury. The purported error was the "strategic decision[] of a 'reasonably competent attorney,'" in other words, and the fact that trial counsel would have pursued a different course in hindsight does not reflect ineffectiveness (People v Benevento, 91 NY2d 708, 712-713 [1998], quoting People v Satterfield, 66 NY2d 796, 799 [1985]; see People v Baldi, 54 NY2d 137, 146 [1981]; People v Brooks, 283 AD2d 367, 368 [2001], lv denied 96 NY2d 916 [2001]).
The second alleged error occurred during voir dire at the second trial, when trial counsel failed to question or challenge a soon-to-be empaneled juror who disclosed that the District Attorney had done legal work for him and his family while in private practice and that their prior relationship would be "in the back of [his] mind," but would not make it "impossible" for him to be fair and impartial. Trial counsel averred that he did not know why he failed to inquire further into those statements, but the record shows that he questioned the potential juror on other subjects and could have easily been satisfied from the answers that the juror would be fair and was "acceptable . . . from the defense point of view" (People v Thompson, 21 NY3d 555, 560 [2013]). Accordingly, even accepting trial counsel's representation that there was no strategic reason for his failure to specifically ask about the prior attorney-client relationship, "defendant is entitled to a fair trial, not one that is error free," and there is no reason to believe that the juror was biased or that the potential error otherwise deprived defendant of a fair trial (People v Pinkney, 90 AD3d 1313, 1316 [2011]; see People v Thompson, 21 NY3d at 560; People v Perry, 154 AD3d 1168, 1171 [2017]).
As for the third and final alleged error, trial counsel acknowledged that he simply forgot to request a detailed jury charge regarding the voluntariness of defendant's statement to investigators at either trial (see generally CJI2d[NY] Statements [Admissions, Confessions]). Even in the absence of that charge, however, trial counsel made the investigators' treatment of defendant during the interview a prominent issue at both trials and discussed it at length in his summations. Under these circumstances, and noting that both juries were charged to consider "the circumstances under which [the statement] was made" in deciding what weight to give it, failing to request a specific [*7]jury charge was not the type of isolated error so "egregious and prejudicial as to compromise . . . defendant's right to a fair trial" and constitute ineffective assistance (People v Caban, 5 NY3d at 152; see People v Snyder, 240 AD2d 874, 875 [1997], lv denied 91 NY2d 881 [1997]). The foregoing complaints accordingly do not reflect ineffective assistance in isolation and, even when taken together, are rare missteps in what the record as a whole confirms was an adroit performance by trial counsel, marked by appropriate pretrial motion practice and a trial defense so skillful that the first trial ended with a deadlocked jury on the most serious charges against defendant (see People v Mesko, 150 AD3d 1412, 1414-1415 [2017], lv denied 29 NY3d 1131 [2017]; People v Perry, 148 AD3d 1224, 1225-1226 [2017]). Thus, inasmuch as the record shows that defendant received meaningful representation, and the nonrecord facts alleged in his CPL article 440 motion would not suggest otherwise if true, County Court properly denied his motion without a hearing (see CPL 440.30 [4] [b]; People v Delorbe, 35 NY3d 112, 121 [2020]; People v Santana, 179 AD3d 1299, 1303-1304 [2020], lv denied 35 NY3d 973 [2020]).
Egan Jr., J.P., Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment and order are affirmed.



Footnotes

Footnote 1: By consenting to the mistrial, defendant agreed to "give[] up his right to be tried by a particular tribunal, and subject[] himself to a second trial" on the counts relating to the stabbing of Nazaire, and he thereafter made no attempt to stop the second trial on double jeopardy grounds (People v Ferguson, 67 NY2d at 390; see People v Haggray, 164 AD3d at 1523; People v Kappen, 142 AD3d 1106, 1107 [2016], lv denied 28 NY3d 1185 [2017]; see also Matter of Suarez v Byrne, 10 NY3d at 534). He is therefore foreclosed from questioning the legal sufficiency of the proof presented at the first trial regarding those counts or arguing that the lack thereof functioned as "an acquittal for purposes of double jeopardy" (People v Biggs, 1 NY3d 225, 229 [2003]; see People v Haggray, 164 AD3d at 1523; People v Kappen, 142 AD3d at 1107; see also Matter of Suarez v Byrne, 10 NY3d at 534).

Footnote 2: The original summary of facts "apprise[d] defendant of the theory to be advanced at trial" with regard to the stabbing of Williams and, as a result, permitted defense counsel to prepare and conduct a defense on the assault count for which defendant was convicted at the first trial (People v Earel, 220 AD2d 899, 899 [1995], affd 89 NY2d 960 [1997]; see CPL 200.95 [1] [a]; People v Byrnes, 126 AD2d 735, 736 [1987]). Although defendant may well be correct in arguing that it did not do so with regard to the counts relating to the stabbing of Nazaire, County Court aptly observed that the issue was a moot point given that the first trial ended in a hung jury on those counts. By the time of the second trial, defendant was indisputably on notice of the People's theory as to when and how Nazaire was stabbed.