People v Mack (2025 NY Slip Op 06757)

People v Mack

2025 NY Slip Op 06757

Decided on December 4, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 4, 2025

111086
[*1]The People of the State of New York, Respondent,
v
Demetrius L. Mack, Appellant.

Calendar Date:October 7, 2025

Before:Garry, P.J., Lynch, Ceresia, Fisher and Mackey, JJ.

Easton Thompson Kasperek Shiffrin LLP, Rochester (Donald M. Thompson of counsel), for appellant, and appellant pro se.
Weeden A. Wetmore, District Attorney, Elmira (Nathan M. Bloom of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Chemung County (Christopher Baker, J.), rendered January 7, 2019, upon a verdict convicting defendant of the crime of murder in the second degree.
In June 2017, the victim was stabbed multiple times during an altercation at a bar in the City of Elmira, Chemung County. He was transported to a local hospital and briefly spoke with a police officer, but did not identify his assailant before succumbing to his injuries a short time later. Following an investigation, defendant was charged by indictment with murder in the second degree in connection with the victim's death. The matter proceeded to a jury trial, where defendant pursued a trial strategy focusing on the purported lack of evidence identifying him as the assailant. After the close of evidence, defendant requested that the jury be charged with a justification instruction, which County Court denied. Defendant was convicted as charged and sentenced to a prison term of 25 years to life. Defendant appeals.[FN1]
Defendant contends that the verdict is against the weight of the evidence, specifically contending that the People failed to establish that he intended to cause the victim's death. When "assessing whether a verdict is supported by the weight of the evidence, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v DeCamp, 211 AD3d 1121, 1122 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1077 [2023]). "Although this Court must review the evidence in a neutral light in making that assessment, we also accord great deference to the jury's credibility determinations, given that the jurors have the opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Harris, 206 AD3d 1063, 1064 [3d Dept 2022] [internal quotation marks and citations omitted]). As charged here, "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). The intent of a defendant to kill "may be inferred from the totality of the circumstances presented and the natural and probable consequences of his or her actions" (People v Green, 190 AD3d 1094, 1096 [3d Dept 2021] [internal quotation marks and citation omitted], lv denied 36 NY3d 1097 [2021]; see also People v Terry, 196 AD3d 840, 842 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]).
The evidence at trial demonstrated that defendant and the victim started fighting in the bar's dimly lit outdoor patio area. According to the eyewitness, who was a relative of the victim, the fight started as a fist fight until the victim[*2], who was larger than defendant, knocked defendant to the ground. Once defendant got up, he began "swinging all recklessly" at the victim, which is when the eyewitness observed a flash of light off something silver in defendant's hand. He then saw defendant "hit" the victim on his left shoulder by the collarbone and observed blood on the victim's clothing. The victim yelled out for the eyewitness to go get a gun, but someone from defendant's group prevented the eyewitness from doing so. The fight spilled inside the bar, then defendant fled through the back door and the victim collapsed near the front door. The pathologist who performed the autopsy on the victim testified that there were five stab wounds to the victim's upper body, including a 3½-inch "deeply penetrating" stab wound to the left upper chest which had severed a major artery. The police were unable to locate the knife used to inflict these wounds on the victim. Based on the foregoing, a different verdict would not have been unreasonable given the superficial nature of the majority of the wounds and that defendant was seen "recklessly" swinging the knife. However, considering the location and manner in which defendant stabbed the victim in the left upper chest, when viewing the evidence in a neutral light and deferring to the jury's determination to credit that proof over defendant's suggestion that he was not attempting to target vital organs or structures, we conclude that the verdict is not against the weight of the evidence (see People v Terry, 196 AD3d at 845-846; People v Green, 190 AD3d at 1096; see also People v Greenfield, 167 AD3d 1060, 1062 [3d Dept 2018], lv denied 32 NY3d 1204 [2019]; People v Newland, 83 AD3d 1202, 1204 [3d Dept 2011], lv denied 17 NY3d 798 [2011]).
Next, defendant contends that he was deprived a fair trial due to certain evidentiary rulings made during the trial by County Court. Specifically, defendant contends County Court erred in preventing defense counsel from asking questions related to the crowd forming outside the hospital, whether the chest wound could have been caused by the victim falling on a knife during the fight, and in allowing hearsay testimony regarding the ownership of a boxcutter found on the floor inside the bar. However, trial courts have broad discretion to limit the scope of cross-examination when the questions are only marginally relevant or pose a danger of misleading the jury (see People v Erfurt, 234 AD3d 1120, 1124 [3d Dept 2025], lv denied 43 NY3d 1008 [2025]). The line of questioning related to the crowd outside the hospital was only marginally relevant, and the discovery of the boxcutter posed a danger of misleading the jury as investigators testified they learned it belonged to a third party and the pathologist otherwise determined it would not have been capable of inflicting the only fatal wound on the victim. Furthermore, since the eyewitness testified that he saw defendant "hit" the victim in the left upper chest with [*3]a knife, County Court also properly limited defense counsel from asking the pathologist to speculate whether it was possible the fatal wound could have been caused by the victim falling on the knife during the fight. Accordingly, we discern no errors with County Court's evidentiary rulings (see id.; People v Doane, 212 AD3d 875, 882-883 [3d Dept 2024], lv denied 39 NY3d 1154 [2023]; People v Jones, 184 AD3d 751, 753 [2d Dept 2020], lv denied 35 NY3d 1113 [2020]).
Defendant also claims that County Court improperly denied his request for a missing witness charge based upon the People's failure to call a prospective witness who was present at the bar during the fight and in the vehicle that transported the victim to the hospital. We disagree. In order to establish entitlement to "a missing witness charge, the proponent of the charge must demonstrate that (1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the control of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (People v Lorenz, 211 AD3d 1109, 1112 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1112 [2023]). Here, two detectives traveled to interview the prospective witness, who had moved to another state after the incident. During this interview, the prospective witness gave an account similar to the eyewitness and displayed a cell phone picture of defendant as the individual who killed the victim. After the interview, one of the detectives testified that the prospective witness refused to answer phone calls and did not return voicemails that the detectives left for him, and that law enforcement had otherwise been unable to locate him. County Court determined that, even if the prospective witness offered noncumulative information, the People had demonstrated that he was not under their control. Under these circumstances, we are satisfied that defendant's request for a missing witness charge was properly denied (see id.at 1113; People v Ferguson, 193 AD3d 1253, 1259 [3d Dept 2021], lv denied 37 NY3d 964 [2021]).
We do, however, find merit in defendant's contention that County Court erred in denying his request to instruct the jury on the defense of justification. "A justification charge must be given if there is any reasonable view of the evidence, when it is considered in the light most favorable to the defendant, that would allow the jury to conclude that the defendant's actions were justified" (People v Saylor, 173 AD3d 1489, 1492-1493 [3d Dept 2019] [internal quotation marks and citations omitted]; see People v McManus, 67 NY2d 541, 549 [1986]; People v Sands, 157 AD3d 1136, 1137 [3d Dept 2018], lv denied 31 NY3d 986 [2018]). In order "for a defendant to be entitled to a justification charge with respect to the use of deadly physical force, the record [*4]must contain evidence that the defendant reasonably believed that the victim was using or was about to use deadly physical force and that the defendant could not safely retreat" (People v Ramirez, 118 AD3d 1108, 1112 [3d Dept 2014]). A charge on the defense of justification remains appropriate where a defendant pursued other defense strategies at trial, including that he or she did not intend to cause the victim's death (see People v Huntley, 87 AD2d 488, 494 [4th Dept 1982], affd 59 NY2d 868 [1983]),was not present or was not the assailant (see People v Steele, 26 NY2d 526, 529 [1970] [recognizing that the jury could disbelieve the alibi defense but still find, on the prosecution's evidence, that a defendant acted justifiably]).The failure to provide a justification charge under such circumstances constitutes reversible error warranting a new trial (see People v McManus, 67 NY2d at 549; People v Austin, 134 AD3d 850, 850 [2d Dept 2015]).
Here, the evidence in the record fails to indicate who was the initial aggressor with respect to the use of physical force, but rather suggests both individuals started fighting immediately after someone — presumably defendant — yelled derogatory remarks at the victim. It was unrefuted that the victim was larger than defendant and had gained the upper hand during the fight, knocking defendant down with several blows. The further question is whether or not defendant was the initial aggressor with respect to deadly physical force (see People v Brown, 33 NY3d 316, 321 [2019]). The eyewitness testified that he did not see the victim with a knife during the fight, and that the only knife he saw was the one wielded by defendant. However, the police recovered an open folding knife on the patio adjacent the picnic tables where the altercation began, near a pool of blood. A police evidence technician explained that one photograph in evidence showed what appeared to be two drops of blood on the knife. Given that the only identifiable DNA on the knife came from the victim, a reasoned view of the evidence is that the victim had unfolded the knife prior to being stabbed by defendant. The medical examiner opined, from the shape of the wound, that this was not the knife that inflicted the fatal injury. Although the eyewitness testified that defendant followed the victim back into the bar, it is unclear from other testimony and the bar's surveillance camera footage if this was to continue the fight or to leave the establishment, as the patio was completely fenced in and the only way in or out of the patio area was through the inside of the bar. Based on the foregoing, when viewed in a light most favorable to defendant, we believe that there was a reasonable view of the evidence which would permit the jury to conclude that defendant's conduct was justified (see People v Powell, 101 AD3d 1369, 1373 [3d Dept 2012], lv denied 21 NY3d 1019 [2013]; People v Zayas, 88 AD3d 918, 919-921 [2d Dept 2011]; People v Fermin, 36 AD3d 934, 936[*5][2d Dept 2007]; People v White, 16 AD3d 440, 441 [2d Dept 2005], lvs denied 4 NY3d 892 [2005], 5 NY3d 771 [2005]). Accordingly, under these circumstances, County Court should have instructed the jury with the requested justification charge, and therefore a new trial is warranted (see People v McManus, 67 NY2d at 549).
While our determination renders defendant's remaining contentions academic, one other error should be avoided during the retrial of defendant. County Court allowed members of the press to take video and still photography during the testimony of certain witnesses. However, "[n]o person, firm, association or corporation shall televise, broadcast, take motion pictures or arrange for the televising, broadcasting, or taking of motion pictures within this state of proceedings, in which the testimony of witnesses by subpoena or other compulsory process is or may be taken, conducted by a court, commission, committee, administrative agency or other tribunal in this state" (Civil Rights Law § 52). Accordingly, the court erred when it allowed audiovisual coverage of the testimonial portion of the trial (see Civil Rights Law § 52; Matter of Heckstall v McGrath, 15 AD3d 824, 825-826 [3d Dept 2005]; People v Nance, 2 AD3d 1473, 1474 [4th Dept 2003], lv denied 2 NY3d 764 [2004]).
Garry, P.J., Lynch, Ceresia and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Chemung County for a new trial.

Footnotes

Footnote 1: We consider the contentions raised by defendant in the brief submitted by his retained counsel and in his pro se supplement.